[Civ. No. 50077. Second Dist., Div. One. Nov. 16, 1978.]

JAN C. MENNIG, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF CULVER CITY et al.,
Defendants and Appellants.

344

COUNSEL

Weissburg & Aronson, Robert A. Klein, Andrew Lichtman and Gary S. Mobley for Plaintiff and Appellant.

Robert S. Ogle, City Attorney, Burke, Williams & Sorensen and Mark C. Allen, Jr., for Defendants and Appellants.

OPINION

THOMPSON, J.—Pursuant to Code of Civil Procedure section 1094.5, Jan C. Mennig sought judicial review of action of the City Council of Culver City which discharged him from his tenured civil service position as chief of police of that city. The trial court issued its writ of mandate directing that the action of the city council be set aside but affirming preceding action of the civil service commission which had ordered that Mennig be suspended for 60 days without pay and demoted to the position of assistant chief of police. The court determined, also, that Mennig was entitled to be compensated as chief of police for the period from September 16, 1974, when he was dismissed from that position by the council, until October 23, 1975, when the civil service commission acting in response to charges filed by the city issued its decision, findings, and recommendations. The trial court denied Mennig's prayer for attorneys' fees in connection with the proceedings.

Both Mennig and the city have appealed from the trial court's judgment. The city contends: (1) the trial court erred in concluding that the council could not validly impose the penalty of dismissal from the civil service; (2) the action of the trial court violates separation of powers by creating a new civil service position of assistant chief of police; and (3) Mennig is not entitled to be compensated as chief of police for the period from September 16, 1974, until October 23, 1975. Mennig contends: (1) the trial court erred in holding that his demotion was justified because the disciplinary procedure employed violated civil service rules and his conduct did not justify discipline; and (2) the court erred, also, in not awarding him attorneys' fees.

We conclude: (1) by reason of the applicable civil service rules and the peculiar factual involvement of the members of the city council in the situation, due process requires that the determination of penalty by the civil service commission be accepted and that of the council held void; (2)

the record supports the conclusion that Mennig has been demoted to an existing position and that a new civil service position has not been created by the trial court's action; (3) because he was not afforded an opportunity to respond to charges before he was dismissed, Mennig was properly granted his right to compensation from September 16, 1974, until October 23, 1975; (4) the record supports the finding that the disciplinary proceedings followed civil service rules; (5) the record also supports the finding that Mennig was guilty of conduct justifying the discipline imposed; and (6) the record does not compel the conclusion that Mennig is entitled to attorneys' fees. Accordingly, we affirm the judgment of the trial court.

## Facts

In Culver City, the office of chief of police is a civil service position from which an incumbent can be removed only for "cause." Civil service employees of the city may be disciplined, reduced in rank, or terminated only as provided in the municipality's civil service rules. Those rules define "appointing authority" as: "the City Council, the Chief Administrative Officer, the department head, and/or any other body of officials or individual official having, under the law, the power to make the appointment to the position to be filled." Section 2 of rule XIV states: "The appointing authority . . . has the authority to take disciplinary action, subject to approval by the Chief Administrative Officer or his delegate." The city council is the "appointing authority" for the office of police chief and other department heads, as well as for the offices of chief administrative officer and city attorney. Discipline may consist of dismissal, demotion, suspension, or other lesser penalties.

Written notice of discipline must be given to the employee. Section 7 of rule XIV provides that any employee subject to disciplinary action shall have the right to appeal to the Culver City Civil Service Commission. Section 13 of that rule provides that after a hearing "[w]ritten findings and recommendations of the Commission shall be rendered . . . . [¶] The recommendations of the Commission shall be binding, except in the case where the appointing authority is the City Council, in which case the recommendations may be modified or overruled by the unanimous vote of the City Council. . . ."

A long-time police officer, Mennig was appointed assistant chief of police of Culver City in 1965. He was appointed chief of police on January 1, 1970. A running dispute between Mennig and the city council developed over the administration of the Culver City Police Department.

A series of incidents led Mennig to believe that the city council was improperly and unfairly interfering with the administration of the police department and that certain of the councilmen were conducting a vendetta against him. One of the councilmen, a deputy district attorney, believed that Mennig had sought to have the councilman transferred in his regular job. Another city councilman, before election to the council, had been a subordinate of Mennig who had engaged in a continuing disagreement with him and who was an unsuccessful candidate for the job of chief of police when Mennig was appointed to it. Most of the councilmen believed that Mennig attempted to exert political pressure upon them by packing the spectators at council meetings and by statements to the press.

In 1974, the intensity of the conflict between Mennig and the city council escalated. Without informing Mennig, the councilman, unsuccessful candidate for Mennig's job, conducted a personal field investigation of Mennig's teaching and military reserve activities in an apparent effort to develop a record that would establish that Mennig was neglecting his duty. The council forbade Mennig to use intradepartmental polygraph examinations without its consent. It prepared a detailed "questionnaire" to be answered by Mennig which was in essence an interrogation into his administration.

On August 22, 1974, purporting to act pursuant to the civil service rules, Mennig filed a "grievance" with the city council and chief administrative officer. The "grievance" states:

"As your Police Chief, I am appalled and disappointed at information coming into my possession relating to the actions of individual Councilmembers. It is unknown whether they were acting at Council direction or not. Further, I am in possession of information relating to the behavior of our Councilmembers which could, when made public, bring great discredit upon them and the Council. As your Chief, I am responsible for the investigation of alleged offenses reported to me, and, accordingly, must be permitted freedom to conduct investigations without attempts at cover-up or to cloud real issues.

"Therefore, pursuant to the appropriate Civil Service Rules, I am hereby filing a grievance relating to:

1. Violation of my privacy and pursuit of personal freedoms established by law;

2. Interference with my official performance of duty;

3. Attempts to damage the reputation of the Police Department and the Office of the Chief of Police;

4. Failure of the Council to identify information in its possession relating to covert efforts on the part of individual Councilmen to damage my reputation, the reputation of my office, and the reputation of the Police Department.

"It is with great regret that I am forced to take this drastic action, as some Councilmembers are not involved in this terrible activity, but must ultimately be informed and involved to clear the air and restore public faith and confidence."

Four days later, the city council attempted to suspend Mennig but did not apprise him of the basis for the suspension. The council's action was subsequently overturned in a separate mandate action pursued by Mennig.

On September 16, 1974, the city council dismissed Mennig as chief of police. The "Notice of Discharge" delivered to Mennig by the chief administrative officer in connection with Mennig's dismissal contains 12 basic charges subdivided into 35 separate specifications.

Charges One and Eight relate to the "grievance" filed by Mennig on August 22. Specifications supporting the charges assert the filing of the grievance document; that the grievance was not filed in good faith, that Mennig caused its contents to be made public, and that Mennig, although requested to do so, refused to state specifically the basis of the allegations in the grievance or to attend a meeting called by the city council to consider the document.

Charges Two, Three, Four, Five and Six all allege a failure to Mennig to abide by the abortive suspension imposed by the council on August 26.

Charge Seven asserts that from December 28, 1970, on, Mennig engaged in outside teaching activity during duty hours in violation of a city council request and directive that he not do so.

Charge Nine alleges unauthorized use by Mennig of city owned vehicles and of telephone and secretarial services.

Charge Ten asserts that from January 28, 1972, onward, Mennig took excessive leave to engage in military reserve activity in violation of city council directions.

Charge Eleven claims that in the period after his suspension Mennig engaged in improper conduct in an effort to summon political, financial, and internal support in his dispute with the council.

Charge Twelve is a laundry list of asserted deficiencies of Mennig in the management of the Culver City Police Department.

The charges are signed by "H. Dale Jones, Chief Administrative Officer." While Jones concurred in the charges by signing them, he had no real discretion in the matter and concurred in the charges at the direction of the city council.

Mennig exercised the appeal rights granted him by the civil service rules of Culver City. At the civil service commission's hearing on the appeal, all of the city councilmen of Culver City testified in support of the charges against Mennig. The commission found that: "the grievance filed by Mr. Mennig did contain a threat to the City Council which could not properly and in good faith be included in a grievance. The threat and implications thereof unavoidably resulted in discredit to the City and its institutions. The threat and its results were of such a nature that, even without reference to the other allegations of Charge 1, disciplinary action was required. However, the interests of the City, the Employee, and the citizens of Culver City will be better served by the less severe form of disciplinary action imposed by this Decision than they would be by an outright discharge."

The commission made no findings on the allegations relating to Mennig's conduct related to his suspension of August 26 because those charges had "been removed from the Commission's consideration due to a final judgment of the Superior Court." With one exception no longer material because of a concession of the parties, the commission found that all other charges against Mennig were not supported by substantial evidence. It recommended that: (1) Mennig be restored to the civil service "with full rights of a permanent civil service employee"; (2) he be suspended for 60 days without pay; (3) he "receive a permanent demotion to the rank of Assistant Chief"; (4) the city council "create an additional co-equal office of Assistant Chief of Police, if necessary"; and (5) Mennig should not be required to serve "any probationary period as Assistant Chief of Police."

Reacting to the findings and recommendations of the civil service commission, the Culver City City Council enacted a resolution "Reviewing the action of the Civil Service Commission and terminating Jan C. Mennig as Chief of Police of the City of Culver City." The resolution adopts the finding that the communication by Mennig of August 22 was a threat to the individual members of the city council. It adds a series of findings of the truth of charges made by the council found by the civil service commission to have been unsubstantiated. The latter include: (1) release of the August 22 document to the press; (2) Mennig's refusal to back up his communication by supplying specifics when requested to do so by the chief administrative officer; (3) Mennig's failure to attend a meeting scheduled to discuss his "grievance"; (4) Mennig's "ineffective leadership of the Police Department"; and (5) his engaging in unauthorized teaching activity. Based upon those findings, the city council disapproved the recommendation of the civil service commission that Mennig be suspended and substituted the penalty of discharge of Mennig from the civil service as of September 16, 1974.

Mennig sought judicial review of the council's action by a petition for administrative mandate pursuant to Code of Civil Procedure section 1094.5. His petition raises the issues raised again on this appeal as well as others now abandoned. It seeks Mennig's reinstatement to the office of chief of police, payment of back salary from September 16, 1974, to the date of reinstatement, and attorneys' fees. The city responded with an answer to the petition which denies its charging allegations.

The trial court determined that by reason of the personal involvement of its members, the city council was "not an independent tribunal entitled to review the decision of the Civil Service Commission" and hence that the resolution discharging Mennig was invalid. It entered its judgment ordering a peremptory writ of mandate directing the city to set aside its resolution discharging Mennig and to take appropriate action to implement the recommendations of the civil service commission to "create a position of Assistant Chief of Police," to restore Mennig to the position of assistant chief of police, to compensate him as chief of police from September 16, 1974, to October 23, 1975, and to compensate him as assistant chief of police from October 24, 1975, until he is restored to duty while allowing offset of earnings against back pay. The court did not award Mennig attorneys' fees for the action.

As requested by the city, we take judicial notice of action by the city council subsequent to the judgment in the trial court. That action discloses that Thomas Kendra, who occupied the position of assistant

chief of police, resigned on November 29, 1977, and that the council then deleted the position from the city's 1978-1979 "budget" to "restore" a pre-April 21, 1975, organization of the police department calling for a chief of police, three captains, but no assistant chief.

### City's Appeal

The city attacks the judgment on three fronts. It asserts that under the civil service rules a unanimous decision of the city council modifying a penalty imposed by the civil service commission can be judicially reviewed only for abuse of discretion and that no abuse is here present. It claims that the judgment is a judicial intrusion upon legislative power because it creates an office of assistant chief which the Legislature did not authorize. It contends that the portions of the judgment awarding back pay are erroneous.

■ *Penalty.* Relying upon the portion of the civil service rules that provides that where the city council is the appointing authority the civil service commission's recommendations of penalty are not binding if modified or overruled by the city council, the city argues that because the council is the appointing authority for office of chief of police unanimous action of the council establishing a penalty in excess of that imposed by the civil service commission is reviewable only for abuse of discretion of the council in its determination.

The city quite correctly states the general proposition that judicial review of administrative determination of the sanction to be imposed for civil service employee misconduct is narrowly limited in scope. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774].) Equally accurate is the city's statement that prior knowledge of the factual background which bears upon its decision or even a prehearing expression of opinion on the result does not, as a matter of statute or constitutional law, of itself disqualify an administrative body from acting on a matter before it. (*City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 782 [122 Cal.Rptr. 543, 537 P.2d 375].)

Those general propositions of law, however, are limited by the dictates of procedural due process. The test of the ability of the administrative body to act is whether in light of the particular facts "experience teaches that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable." (*Withrow* v. *Larkin* (1975) 421 U.S. 35, 47 [43 L.Ed.2d 712, 723, 95 S.Ct. 1456].) Thus "those with a substantial pecuniary interest in legal proceedings should not adjudicate

these disputes." (*Gibson* v. *Berryhill* (1973) 411 U.S. 564, 579 [36 L.Ed.2d 488, 500, 93 S.Ct. 1689].) The decision may not be made by a decisionmaker who has become personally "embroiled" in the controversy to be decided. (*Taylor* v. *Hayes* (1974) 418 U.S. 488, 501-503 [41 L.Ed.2d 897, 909-910, 94 S.Ct. 2697], cited for its applicability to administrative proceedings in *Withrow* v. *Larkin, supra,* 421 U.S. 35, 47, fn. 15 [43 L.Ed.2d 712, 723].)

Here the record supports the trial court determination that the members of the city council had become so personally embroiled in the controversy with Mennig as to disqualify them from acting to increase the degree of discipline imposed by the civil service commission. Knowledge of the communication that is the sole act of misconduct that is here relevant conceivably did not embroil the council members personally in the matter despite the communication's attack upon the council. (See *City of Fairfield* v. *Superior Court, supra,* 14 Cal.3d 768, 782.) We may assume for the purposes of this opinion that even the action of the members of the city council in testifying in support of the charges against Mennig did not do so. But once the civil service commission had determined that the bulk of the charges which the members of the city council had attempted to support by their testimony were unfounded, a degree of embroilment developed which "experience teaches" created such a "probability of actual bias" in the members of the council that their further participation as decisionmakers was constitutionally intolerable. (*Withrow* v. *Larkin, supra,* 421 U.S. 35, 47 [43 L.Ed.2d 712, 723].) At that point in the proceedings, the members of the city council, if not fighting for their collective political lives, were nevertheless impelled to seek vindication. They in fact did so in their resolution increasing the penalty against Mennig by recording as true facts to which they had testified which the commission had found to be unsubstantiated.

██ The city seeks to salvage its position by reliance upon the "rule of necessity." Citing a string of decisions exemplified by *Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 404-405 [71 Cal.Rptr. 255], it argues that the procedural due process requirement of a decisionmaker unembroiled personally in the controversy he is to decide yields when the decisionmaker is the only one capable of acting in the matter. Whatever may be its applicability generally, the "rule of necessity" is not pertinent here. The civil service rules here applicable, while denominating the determination of the degree of discipline imposed by the commission a "recommendation" to the city council, when read in their entirety empower the commission to determine the penalty. Only a unanimous vote by the city council can veto the penalty. Absent that unanimous vote,

the degree of discipline imposed by the civil service commission stands. The council is thus not the only decisionmaker capable of acting in the matter.

■ *Separation of Powers.* The city argues that the city council, as the only legislative body involved, has the sole power to create the office of assistant chief of police so that judicial action mandating creation of the position violates constitutional separation of powers.

We do not reach the legal issue of the validity of the city's argument. The post-judgment resolutions of which the city, with commendable candor, asks that we take judicial notice establish that after judgment: (1) there was an office of assistant chief of police; and (2) the incumbent of that office had resigned so that it was vacant and available. What is left is action by the city council deleting financial support for the position from its budget. Thus, the question at bench is the right of the city to avoid the mandate of the trial court by eliminating from its budget provision for the position to which the court directed its employee be reinstated.

The city does not have that right. Mennig is entitled to "the fruits" of his judgment. (*People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 537 [72 Cal.Rptr. 790, 446 P.2d 790].)

■ *Back Pay.* The city concedes that the discipline imposed upon Mennig could not be made effective until Mennig was informed of the punitive action against him and he was given an opportunity to respond. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306].) It does not contest the proposition that where that opportunity is not given prior to a formal hearing the punitive action cannot be made effective until the administrative agency files its decision. (*Id.*)

The city argues, however, that Mennig was given notice of the charges against him and an opportunity to respond to them by notice that his grievance would be heard by the city council at a meeting scheduled for September 5, 1974. Hence, says the city, Mennig is entitled to be paid at the higher rate as chief of police only to that date because, although notified of the meeting, he did not attend it.

The city's argument misconstrues the facts. Mennig was given notice that his grievance against the city council would be heard on September 5, 1974. He was not given notice that the council would consider punitive action against him.

## Mennig's Appeal

Mennig also mounts a multi-faceted attack on the judgment. He claims that the entire disciplinary proceeding is fatally infected by a failure of the city to follow its civil service rule requiring that the initiation of disciplinary action be approved by the chief administrative officer. He asserts that there is a lack of substantial evidence supporting the trial court's finding of fact that he had engaged in improper conduct by including in the guise of a grievance a threat to the city council which could not properly and in good faith be included in it and, alternatively, that his misconduct, if any, does not justify demotion. He contends that because the finding in the administrative proceeding was the result of arbitrary or capricious action he is entitled to attorneys' fees as provided in Government Code section 800.

■ *Approval of Chief Administrative Officer.* Relying upon section 2 of rule XIV of the civil service rules, Mennig contends that all disciplinary action taken against him is void. That section of the rule states: "The appointing authority, as defined in Rule VIII, has the authority to take disciplinary action, subject to approval by the Chief Administrative Officer or his delegate." Section 5 of rule VIII states in pertinent part: "Under the provisions of these Rules . . . , the appointing authorities shall be: [¶] a. The City Council, for the Chief Administrative Officer, City Attorney, and department heads; . . ." Subsequent subsections provide that the chief administrative officer, department heads, and division heads are the appointing authority for various categories of employees. Mennig contends that although the chief administrator concurred in the charges filed against him by signing them he did not "approve" the disciplinary action instituted by the council because, as found by the trial court, the chief administrative officer has no real discretion in the matter and concurred at the direction of the city council. Thus, argues Mennig, the action is void for failure of the agency to follow its own rules.

Mennig gives a broader sweep to section 2 of rule XIV than is its meaning in context. The "subject to approval" language cannot be construed as investing the chief administrative officer with any independent authority over the initiation of disciplinary proceedings in the situation of employees appointed by persons higher on the administrative totem pole than department heads and division heads. If the rule is given the broad meaning asserted by Mennig so that the chief administrative officer must exercise an independent authority to approve discipline of persons appointed by the city council, the rule would require that the

chief administrative officer, a person specifically designated within the category, could not be disciplined unless he first approved the initiation of disciplinary proceedings against himself. If the broad construction is applied, the chief administrative officer would be required not only to initiate disciplinary proceedings against employees where he is the appointing authority but also to again exercise an independent authority to determine whether he was correct in initiating the proceedings. We hence conclude that the signature of the chief administrative officer on the charges satisfied the rule. (See *In re John H.* (1978) 21 Cal.3d 18, 25-26 [145 Cal.Rptr. 357, 577 P.2d 177].)

Mennig argues that context does not require the narrow construction which we here adopt because the office of chief administrative officer is excluded from the "classified service" by the rules. That argument ignores the proposition that the disciplinary sections of the rules are, by their terms, not limited to application to employees in the classified service while other provisions are expressly applicable to employees in that status. In light of that distinction in language, it seems the only reasonable construction that if the city were to elect to proceed by way of formal disciplinary action against an employee such as the chief administrative officer who is excluded from the classified service, that employee would be covered by the rules governing imposition of discipline.

Finally, Mennig contends that a construction of the rules in a fashion which precludes the requirement of approval by the chief administrative officer after exercise of an independent authority is precluded by collateral estoppel. He argues that the issue was litigated and determined in his favor in the litigation which held that his abortive suspension of August 26, 1974, was invalid.

Mennig's reliance upon the doctrine of collateral estoppel to prove his point is misplaced. It is not supported by the record of the prior proceedings. In that proceeding, an effort to suspend Mennig was found to be invalid because the notice of suspension: (1) did not inform him of the basis of the disciplinary action; (2) did not notify Mennig of his appeal rights; and (3) was not approved by the chief administrative officer. The record presented to the trial court in the case at bench does not establish the basis for the finding in the earlier action concerning lack of chief administrative officer approval. For all we know, that officer did not there concur by signing the charges as he did here.

■ *Evidence of Misconduct.* Mennig asserts that there is a lack of substantial evidence to support the trial court's factual finding that his purported statement of grievance contained a threat to the city council which could not properly and in good faith be included in a grievance. In the alternative, he argues that if he threatened the council in bad faith his misconduct is of such a trivial nature as not to justify the penalty of demotion in light of his prior years of exemplary service.

On its face, the communication which Mennig labeled a "grievance:" (1) states he is possessed of information relating to the behavior of council members which could if known to the public bring great discredit upon them; (2) reminds that as chief of police he is responsible for the investigation of offenses reported to him; and (3) states that Mennig must have freedom to conduct investigations without attempts at cover up. The communication clearly implies that Mennig had been informed of councilmanic misconduct of a character calling upon him to investigate it for criminality and that the council had been preventing him from doing so as a "cover-up."

The communication is hardly the innocuous document asserted by Mennig. It smacks of at least graymail. In the circumstances where Mennig's inability to back up his claims supports a trial court finding of bad faith, the document supports the exercise of administrative agency discretion in demoting Mennig.

■ *Attorneys' Fees.* Government Code section 800 states in pertinent part: "In any civil action to . . . review the . . . determination of any administrative proceeding . . . where it is shown that the . . . determination of such proceeding was the result of arbitrary or capricious action . . . the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars . . . ." The trial court denied Mennig's prayer for attorneys' fees pursuant to that section. He here asserts that the record compels a finding that the council's action was arbitrary and capricious and hence a conclusion that attorneys' fees be awarded.

Our examination of the record compels the conclusion that the trial court could properly conclude that the council's action while erroneous was neither arbitrary nor capricious. The procedural due process doctrine

correctly applied by the trial court to invalidate the council's action is not such a precise legal principle that failure to abide by it is necessarily other than an error in judgment.

*Disposition*

The judgment is affirmed. Each party to bear its own costs on appeal.

Lillie, Acting P. J., and Hanson, J., concurred.

Petitions for a rehearing were denied December 12, 1978, and the petitions of all the parties for a hearing by the Supreme Court were denied January 24, 1979.