Filed 1/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WOODY'S GROUP, INC., et al.<br><br>　　Plaintiffs and Appellants,<br><br>　　　　v.<br><br>CITY OF NEWPORT BEACH et al.,<br><br>　　Defendants and Respondents. | G050155<br><br>(Super. Ct. No. 30-2013-00687091)<br><br>O P I N I O N |

Appeal from one order and purported appeal from another order of the Superior Court of Orange County, Derek W. Hunt, Judge. First order reversed with directions, purported appeal from other order treated as a petition for writ of mandate. Petition granted.

Roger Jon Diamond for Plaintiffs and Appellants.

Aaron C. Harp, City Attorney, Michael Torres, Assistant City Attorney; Best Best & Krieger, Jeffrey V. Dunn and HongDao Nguyen for Defendants and Respondents.

\*　　　　\*　　　　\*

# I. INTRODUCTION

The language of the law is replete with synonyms for fairness: due process, equal protection, good faith, harmless error are all ways of expressing our commitment to fairness. The City Council of Newport Beach violated at least two basic principles of fairness in overturning a permit application approved by the city's planning commission. It should come as no surprise, then, that their action also violated California law.

First basic principle: You cannot be a judge in your own case. In this case Councilmember Mike Henn, having already voiced his "strong[]" opposition to Woody's application, was allowed to appeal the approval of Woody's application to the very body on which he sits, where he did his best to convince his colleagues to vote with him against the application.

Second basic principle: You cannot change the rules in the middle of the game. The Newport Beach Municipal Code requires appeals from the city's planning commission to the city council be brought by "interested part[ies]," who pay a filing fee and submit their appeal on a form provided by the city. (Newport Beach Mun. Code, § 20.64.030.)[1] The Newport Beach Municipal Code makes no provision for appeals by council members acting in their role as council members. The city council violated its own municipal code by entertaining Henn's appeal even though he didn't follow the procedures laid out in the code, and then retroactively tried to justify that violation by claiming the city has a custom of extending such lenity to council members.

As we explain in detail below, two cases requiring municipal governments to play fair are directly on point and require reversal here. *Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547 invalidated a city council decision to reverse a planning commission decision after the council appealed the planning commission's decision to

---

[1] We of course grant the city's request for judicial notice of portions of the city's own Municipal Code.

2

itself. *Cohan* held dispositive the fact the city council's initiation of an appeal from the planning commission decision was in violation of the city's own municipal code. *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470 held the prehearing bias of one planning commission member was enough, by itself, to invalidate a planning commission decision that had overruled a city planning director's approval of a project. Reading those two cases together we can only conclude the trial court erred in not granting Woody's request for an administrative writ of mandate restoring the original planning commission's grant of its application.

## II. FACTS

Woody's Wharf is a long-established restaurant overlooking the harbor in Newport Beach. It sits on the Lido Isle portion of Newport Beach, a strip of land that curves around Newport Harbor, which itself surrounds Balboa Island. In land-use jargon, the neighborhood is a "mixed use" one, but "mixed use" understates its nature. The restaurant is in a trendy marina area that includes a number of restaurants, bars, residences and condominiums. A diner at Woody's would likely be looking out at boats and boat slips in the harbor and a parade of residents, shoppers, and tourists. There was testimony at the city council meeting that some customers come to the restaurant in their boats.

On September 5, 2013, the Newport Beach Planning Commission voted 5 to 2 to approve a conditional use permit and variance to allow Woody's to have a patio cover, remain open until 2 a.m. on weekends, and allow dancing inside the restaurant. The patio approval and 2 a.m. extension were, in fact, interrelated. The idea was to minimize, by the construction of the new patio cover, any noise that might be made by patrons talking on the patio after 11 p.m.

Four days later, on September 9, Newport Beach City Council member Mike Henn sent the city clerk an email in which he made an "official request to appeal" the planning commission's decision because he "*strongly believ[ed]*" (italics added) the

3

"operational characteristics requested in the application and the Planning Commsion's decision are inconsistent with the existing and expected residential character of the area and the relevant policies of the voter approved 2006 General Plan."

The Newport Beach Municipal Code has a number of detailed requirements to appeal a planning commission decision. To be eligible to appeal at all, one must be an "interested party." (Newport Beach Mun. Code, § 20.64.030(A).) Appeals "shall" be filed on forms provided by the city clerk (see Newport Beach Mun. Code, § 20.64.030(B)(1)(b)), and must be accompanied by a filing fee identified in the city's fee schedule. (Newport Beach Mun. Code, § 20.64.030(B)(2).)

It is undisputed that Henn does not claim to have been an "interested party," as that term is typically used, did not use the city clerk's form, and paid no filing fee. It is a reasonable inference that the total cost of appealing a planning commission decision to the city council (not including attorney fees) can easily exceed $1,000, and might even run as high, in a matter like Woody's application, as $4,100.[2]

The city council heard Henn's appeal on October 8, 2013. Woody's did not waive any challenges to the irregularity of Henn's appeal to a body on which he himself would sit. Woody's attorney took several minutes of his allotted time at the city council meeting to argue that Henn was not allowed to bring the appeal under the relevant municipal code provisions and that he was biased.[3] But he was rebuffed by the city attorney who said "Well, the Code does provide that the city council member can basically call it up for review."

---

[2]     Woody's had spent $4,100 on its own earlier appeal, so it seems reasonable to infer the cost of appealing to the city council this time around would be about as much. And that, as far as we can tell, does not include attorney fees.

[3]     Counsel even cited the Ninth Circuit's opinion in *Pacific Shores Properties v. City of Newport Beach* (9th Cir. 2013) 730 F.3d 1142, which was not exactly complimentary concerning Henn's and his fellow council members' efforts to minimize group homes for drug and alcohol rehabilitation in the City of Newport Beach.

4

It was a lively meeting, with a number of speakers on both sides. The case to reverse the planning commission's decision may be fairly summarized this way: While the area in which Woody's is located is a mix of residential and commercial uses including a number of bars, restaurants and marinas, the recent trend (apparently encouraged by a 2006 general plan adopted by the city) has been for more residential development. However, the aggregation of bars in the area has led to the problem of patrons who have had too much to drink leaving their respective establishments at 2 a.m. and sometimes vomiting and urinating in public. The point was perhaps best articulated by a resident of the 28th Street Marina, who asserted Woody's patrons are intoxicated when "they are all dumped onto the street at 2 a.m." To let Woody's remain open until 2 a.m. would only exacerbate the problem of 2 a.m. inebriates. Residents complained that allowing Woody's such late hours would effectively convert it from a restaurant into a "nightclub."

The case to affirm the planning commission was set out with equal fervor: Woody's is a long-time Newport Beach "institution" (the mayor's own characterization), once owned by actor Chuck Norris. It has been open late on weekends and has allowed interior dancing since its inception in the mid-1960's. It is located in a truly mixed-use area that appeals to urbanites seeking a "walk-to" social life, and opponents of the way it has always operated are simply trying to change the area into something less diverse than it has been historically. One 24th Street resident speaking on behalf of Woody's, in the process of praising the diversity of the area, went so far as to argue Woody's opponents were trying to change the character of the area into something more like Irvine. Moreover, as a representative from the planning commission noted, noise is not a problem at all. While several residents complained of noise, the only evidence received by the council from actual noise *studies* (both Woody's and the city's) found that Woody's does not even marginally add to the area's ambient noise level, a fact specifically noted by the planning commission as well.

After the council concluded the public commentary portion of the meeting, council member Henn spoke first. Henn's speech takes up about 13 pages of transcript of the city council meeting. None of the other council members spoke for more than two or three paragraphs. Henn gave an extraordinarily well-organized, thoughtful and well-researched presentation why the planning commission decision needed to be overturned. The speech, in fact, was so well-organized, well-researched, and thoughtful it seemed unlikely to be extemporaneous and Henn admitted that very fact at the end of the meeting. He said – when Woody's counsel pointed out his obvious pre-meeting preparation – that he had prepared his remarks before the meeting based on a "careful review and my own independent diligence before this meeting started."

The council voted 4 to 1 to reverse the planning commission's decision, with a 6th member abstaining and the 7th recusing himself. The formal resolution reversing the city planning commission's decision was adopted November 12, 2013, as Resolution 2013-75. With regard to the question of whether Henn's appeal was appropriate under the city's own municipal code, the resolution said: "Councilmembers are exempt from paying the filing fee provided by NBMC Section 20.64.030(B)(2) under the City's long-standing policy and practice of not requiring Councilmembers to pay a filing fee because their appeals are taken for the benefit of the City's residents. Since 2008, there have been eleven (11) appeals of Planning Commission decisions initiated by City Council Members and the City Clerk has not required the payment of an appeal fee under the City's long-standing policy and practice."

The case segued rapidly into litigation. Woody's sought administrative mandate to overturn the resolution the next day (November 13), also asserting a second cause of action for violation of civil rights (a "1983" claim). Less than 30 days later – before the administrative record had been completed – the city filed a cross-complaint for injunctive relief. In March 2014, the city requested, and in April obtained, a preliminary injunction which prohibited Woody's from operating after 11 p.m. or allowing dancing.

6

And in May the court heard Woody's application for a writ of administrative mandate, which it denied. Woody's notice of appeal in May included both the April order granting the city its preliminary injunction and the May order denying Woody's administrative mandate.

### III. DISCUSSION

A. *Appealability*

There is a small procedural detour we need to make before we address the merits of this case. An appeal from a preliminary injunction is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); e.g., *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 208.) The appeal from the preliminary injunction in this case was timely, so there is no problem there. But an appeal from an order denying a petition for administrative mandate is not appealable when there are still causes of action that remain outstanding. *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697, made that clear in no uncertain terms: "When an order denying a petition for writ of administrative mandate does not dispose of all causes of action between the parties, allowing an appeal from the denial order would defeat the purpose of the one final judgment rule by permitting the very piecemeal dispositions and multiple appeals the rule is designed to prevent." In that regard, Woody's second cause of action for damages under federal law (42 U.S.C. § 1983) has not been dismissed, a fact noted by the trial judge at the hearing on the administrative mandate. That means we have only one strictly proper appeal before us: the one involving the preliminary injunction.

However, this is an appropriate case in which to exercise our power to consider the appeal from the order denying the petition for administrative mandate as a de facto petition for a writ of mandate seeking to vacate that order. There are several reasons this case presents sufficiently unusual facts to justify such discretion. Mainly, we must address the merits of the preliminary injunction *anyway*, and, given the nature of the record here, those merits are almost coterminous with the merits of the challenge to the

7

trial court's denial of the administrative mandate petition. *Not* considering the merits of the ruling on the administrative mandate petition would be unnecessarily circuitous and expensive to both parties, particularly if we were to conclude the preliminary injunction was improvidently granted. Furthermore, the parties have briefed the merits and treated the appeal as an appeal; no good purpose would be served by confining our review to the preliminary injunction. And not only does Supreme Court precedent support our conclusion (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [treating appeal from a nonappealable order as a petition for an extraordinary writ because not doing so could lead to unnecessary trial proceedings and result in ""unnecessarily dilatory and circuitous"" further litigation]) but *Cohan, supra*, 30 Cal.App.4th 547 is directly on point. That case likewise considered the merits of a petition for writ of mandate challenging a city council's reversal of a planning commission decision even though other causes of action remained. (See *Cohan, supra*, 30 Cal.App.4th at p. 554 ["Judicial economy would not be served by awaiting the outcome of the trial on the other causes of action if a procedural violation raised in an improvident appeal required reversal of the trial court's ruling."].) So we proceed.

B. *Due Process*

1. *No Biased Adjudicators*

Most of us think of city councils as legislative bodies. But city councils sometimes act in an *adjudicatory* capacity, that is, they sit in a role similar to judges. Judging applications for land-use permits is one of those times. (*Wiltshire v. Superior Court* (1985) 172 Cal.App.3d 296, 304.) And, as recognized in *BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205 – the main case on which the city relies – when functioning in such an adjudicatory capacity, the city council must be "neutral and unbiased." (*Id*. at p. 1234 ["The contention that a fair hearing requires a neutral and unbiased decision maker is a fundamental component of a fair adjudication . . . ."].)

8

As it turns out, there is already a body of case law bearing on whether an applicant for a land use permit is afforded procedural due process when a member of the adjudicatory body considering the permit is, or may be, biased against the applicant. (See *Nasha, supra,* 125 Cal.App.4th 470 [member of planning commission wrote article attacking project under consideration, member held biased and commission's decision reversed]; *BreakZone, supra,* 81 Cal.App.4th 1205 [city council member exhibited no bias in asking for appeal of planning commission decision where the municipal code expressly provided for such action]; *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1173 [city council member should have recused himself because proposed project had "direct impact" on the "quality of his own residence"]; *Cohan, supra,* 30 Cal.App.4th 547 [city council, acting as a whole, appealed decision it didn't like to itself despite absence of authorization to bring such an appeal; city council decision reversed]; accord, *Gai v. City of Selma* (1998) 68 Cal.App.4th 213 [member of personnel commission investigating officer's discharge should have recused himself because he was actually biased against officer]; *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351 [members of city council who became personally "embroiled" in conflict with police chief should have recused themselves on question of discipline of police chief].)

The generally accepted linguistic formation of the rule against bias has been framed in terms of *probabilities*, not certainties. The law does not require the disappointed applicant to prove actual bias. Rather, there must not be ""'"an unacceptable probability of actual bias"'"" on the part of the municipal decision maker. (*Nasha, supra*, 125 Cal.App.4th at p. 483; *BreakZone, supra*, 81 Cal.App.4th 1205, 1236 ["To prevail on a claim of bias violating fair hearing requirements, BreakZone must establish 'an unacceptable probability of actual bias on the part of those who have actual decisionmaking power over their claims.' [Citation.]"].) Thus bias – either actual or an "unacceptable probability" of it – alone is enough on the part of a municipal decision

9

maker is to show a violation of the due process right to fair procedure. (E.g., *Cohan, supra*, 30 Cal.App.4th at p. 559 ["A biased decisionmaker is constitutionally unacceptable."].)

As *Nasha* made clear, allowing a biased decisionmaker to participate in the decision is enough to invalidate the decision. There, a city planning director approved a five-residence development project in the Santa Monica Mountains, subject to conditions. There was a properly authorized appeal by a neighbor and a conservancy to the planning commission. (*Nasha, supra*, 125 Cal.App.4th at p. 475.) Prior to the hearing by the commission, however, one of the planning commission members wrote an unsigned article in a local residents association's newsletter advocating "a position against the project" because he perceived it to be a threat to wildlife migration patterns. (*Id*. at p. 484.) He also spoke against the project at a neighborhood association meeting. While the commission member acknowledged, at the planning commission meeting, that he was the author of the unsigned article, he didn't disclose that it was not "merely informational," but rather "advocated a position against the project." (*Id*. at p. 477.) And at the meeting, the commission member was the one to bring the motion to grant the appeal from the director's decision, which was then carried on a three-to-one vote. (*Id*. at pp. 477-478.) The developer subsequently sought a writ of mandate to overturn the planning commission decision, but the trial court denied it on the ground the developer should have known about the member's authorship of the article. The Court of Appeal reversed, concluding the planning commission's decision was "tainted by bias and must be vacated," with directions to the trial court to issue an order to the planning commission to reconsider the appeal before "an impartial panel." (*Id*. at pp. 485-486.)[4] The *Nasha*

---

[4] A portion of the opinion was devoted to showing that the developer did not waive his challenge by not having established, at the administrative level, that the commission member had written the article. (See *Nasha, supra*, 125 Cal.App.4th at pp. 484-485.)

10

court held the developer had established "an unacceptable probability of actual bias" on the commission member's part. (*Id*. at p. 482.)

We conclude Woody's has likewise established an "unacceptable probability of actual bias" on Henn's part. Henn's "notice of appeal" – our term to describe his email – showed he was strongly opposed to the planning commission's decision on Woody's application. That is, as in *Nasha*, he took "a position against the project." (*Nasha, supra*, 125 Cal.App.4th at p. 477.) And also, like the biased member in *Nasha*, Henn was the one to propose the motion that the lower decision be overturned. Henn's speech to the council had been written out beforehand, wholly belying his own self-serving comment at the hearing that "I have no bias in this situation." He should not have been part of the body hearing the appeal.

2. *No Authority to Hear the Appeal*

The problem of bias is amplified when it is *combined* with the related phenomenon of a city violating its own procedure by initiating an appeal to itself. Both are present in the case before us, both occurred in *Cohan*, and *Cohan* augments *Nasha's* applicability to the council's decision here.

In *Cohan*, a property developer obtained approval from the planning commission of an application to develop a parcel of property, though myriad conditions were imposed. The project was slated for city council review on only one matter: a permit for tree removal. Even so, at the next city council meeting – held three days prior to the end of the appeal period – several local citizens spoke against the project, and others sent letters urging the city council to appeal the planning commission decision. (*Cohan, supra*, 30 Cal.App.4th at pp. 552-553.) So the council voted to waive state statutory 72-hour notice provisions (part of the Brown Act) and added the appeal to its agenda as an "urgency" matter, then voted to consider the *entire* project in about three weeks (the same time the tree permit was to be considered). (*Id*. at p. 553.)

11

Three weeks later, the city council conducted a noticed hearing on its appeal of the planning commission decision, at which 20 residents spoke against or submitted statements against the project. The council meeting ended with the council "grant[ing] the appeal" which rejected the entire project. (*Cohan, supra*, 30 Cal.App.4th at p. 553.) The developer then filed a complaint seeking, inter alia, a writ of mandate. The trial court acknowledged that the city council had not followed its own code or the state statutory notice provisions – indeed, unlike our case, the trial court ruled that the city council's appealing a decision to itself was "void" – but nonetheless concluded the council's process was "adequate" because of the likelihood that someone in the large number of opponents of the project would have filed an appeal within the remaining three days anyway. The trial court's rationale was that the council would then have heard the matter anyway, the outcome would have been the same, so all errors were harmless. (*Id*. at pp. 553-554.)

But the appellate court granted a writ of mandate ordering the trial court to reverse itself and enter a new order "nullifying" the "Council's appeal to itself." (*Cohan, supra*, 30 Cal.App.4th at p. 561.) It held the Brown Act notice violation was indeed harmless. (*Id*. at p. 556.) But it zeroed in on the fact the city's municipal code did not entitle the council to bring an appeal to itself. In doing *that*, said the court, the council "acted in an arbitrary and high-handed manner." (*Id*. at p. 558.) It was the fact "the Council, in its zeal, made sure the decision did not stand unchallenged," in the context of the lack of authority to initiate the appeal in the first place, that constituted a violation of the due process right to a fair procedure. (*Id*. at p. 559.) Said the court: "The Council ignored the very laws and regulations meant to ensure fair process concerning property development conflicts." (*Id*. at p. 560.)

There was a paragraph in *Cohan* qualifying its conclusion. Not surprisingly, Newport Beach relies on that paragraph in this appeal. It said, "Our holding should not be read as invalidating all appeals taken by a city council or other governing

body to itself from a decision of a subordinate agency. We do emphasize, however, that if such a procedure is contemplated, *it should be authorized by the ordinances or rules which govern appeals to such entity, and some direction should be given in such ordinances or rules concerning specification of grounds and appropriate burdens of proof.* No elected individual appealed here. The *Council* appealed. Had a single council member been the appellant (and complied with the municipal code), he or she might have been disqualified but the remainder of the City Council could have voted." (*Cohan, supra*, 30 Cal.App.4th at p. 559, first italics added.)

But the city reads too much into the *Cohan* caveat. When read in context, all it does is dispel any doubt the reader might have as to the appellate court's reasoning. *Cohan* found a violation of due process because the city council's appeal to itself was *not* authorized by the city's own ordinances or rules. The most that Newport Beach can validly wring out of *Cohan's* qualifying paragraph is that the court was willing to say (and even this is arguably dicta) that a lone city council member *might* have validly appealed *if* such an appeal had "complied with the municipal code" (*Cohan, supra,* 30 Cal.App.4th at p. 559) *and* the member was willing to be disqualified from his or her own appeal.

To apply *Cohan*'s analysis, we turn to the question of whether Henn's appeal was indeed authorized by the city's own municipal code. At the beginning of the council meeting in question, the city attorney confidently said, "the Code does provide that the city council member can basically call it up for review." He could hardly have been more wrong.

As an appendix to this opinion we reproduce the entirety of the portion of the Newport Beach Municipal Code (chapter 20.64) dealing with appeals from planning commission decisions. We do so to demonstrate that there is no provision for free appeals by city council members. In fact, an ordinary reader of the city's code would

13

conclude that council members were actually *affirmatively prohibited* from bringing appeals to themselves.

The relevant code provisions begin by telling the reader the purpose of the chapter is to provide procedures for appealing various decisions, including the planning commission's. (Newport Beach Mun. Code, § 20.64.010.) Then it designates the city council as the body to hear appeals from the commission. (Newport Beach Mun. Code, § 20.64.020(D).)

Then comes a section called "Eligibility." It is plain: "Appeals may be initiated by *any interested party*." (Newport Beach Mun. Code, § 20.64.030(A), italics added.) Next comes a substantive notice requirement in writing. It requires that more than an issue must be stated; the appeal must be in writing and state *both* "the facts and basis for the appeal." (Newport Beach Mun. Code, § 20.64.030(B).)

A deadline is specified. Prospective appellants have only 14 days "following the date the action or decision was rendered" to file their appeal, unless there's a specific provision in the Municipal Code to the contrary. (Newport Beach Mun. Code, § 20.64.030(B)(1).)

A few more hoops to jump through are then enumerated. Appeals to the city council must be on "forms provided by the Clerk" (Newport Beach Mun. Code, § 20.64.030(B)(1)(b)) and accompanied by a filing fee as identified from the Clerk's "master fee schedule." (Newport Beach Mun. Code, § 20.64.030(B)(2).)

Substantive rules of appellate review are next. If an appeal is taken, it means the decision from which it is taken has "no force of effect [*sic*: obviously "or" instead of "of" was meant] as of the date the appeal is filed," and there is to be "de novo" review of any planning commission appeals. (Newport Beach Mun. Code, §§ 20.64.030(C)(1) and (C)(3)(a).) Significantly, the reviewing body hearing an appeal (in the case of an appeal from the planning commission, the city council) "shall" – suggesting it has no choice in the matter – "hear testimony of the appellant, the applicant,

14

*and any other interested party*"  (Newport Beach Mun. Code, § 20.40.030(C)(3)(c)), again stressing the restriction of appeals to interested parties.

The fact the reviewing body is acting in an adjudicatory capacity is then emphasized by language making clear that the body is to act as a *fact-finder* in coming to one of three possible courses of action.  ("As provided in this Zoning Code, the review authority may, based upon findings of fact about the particular case:  . . . .")  The first three possible courses of action are broadly analogous to those available to an ordinary appellate court.  The reviewing body may affirm or reverse or some combination of the two and must (as appellate courts in California are required to do (see Cal Const., art. VI, § 14)) state its reasons.  (Newport Beach Mun. Code, § 20.40.030(D)(1)(a).)

The reviewing body is also given two other options:  (1) the adoption of additional conditions of approval to address issues "other than those that were the basis of the appeal" or (2) denial of the permit approved by the "previous review authority" or elimination of "one or more conditions of approval."  (Newport Beach Mun. Code, §§ 20.64.030(D)(1)(b) & (D)(1)(c).)  In the event "new or different evidence is presented on appeal," the reviewing body also has the option of remanding the "matter to the previous review authority for further consideration."  (Newport Beach Mun. Code, § 20.64.030(D)(2).)

There are two final provisions.  The first is that a "tie vote by the review authority on appeal" means "the decision being appealed shall stand."  (Newport Beach Mun. Code, § 20.64.030(D)(3).)  The second contains language that the Municipal Code's chapter on appeals is to be taken seriously – it is not just a series of hints.  The provision says no person "shall" seek "judicial review of a City decision" until "all appeals to the Commission and Council have been first exhausted *in compliance with this chapter.*"  (Newport Beach Mun. Code, § 20.64.040, italics added.)

The same rules applicable to statutes, said the courts in *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70

15

Cal.App.4th 281, 290 and *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668, govern local ordinances as well. The Newport Beach Municipal Code clearly does not allow for city council members bringing appeals from city planning commission decisions to – literally – themselves. There is absolutely no provision in the code for an exception for city council members to code's rules requiring appellants be "interested," post a fee, and use the right form. The city's response – that it has been violating this rule for a long time – is not convincing here.

Indeed, under the canon of *expressio unius est exclusio alterius,* the use of the phrase "interested party" without explicit provision for a city council member exception – indicates that city council members would have to be *disqualified* from participating in any appeal they brought. If the code says "interested person" under the heading of eligibility, it is simultaneously conveying the thought that *dis*interested persons are not eligible. An "interested party" for purposes of *bringing* the appeal cannot simultaneously be a "disinterested person" for purposes of affording due process in the *hearing* of the appeal.

And that restriction is doubly emphasized by the provision at the end of the section saying that no attack is to be made on a decision in the courts *unless* there has been "compliance" with the chapter in the municipal code concerning appeals. Obvious implication: There is no room for unwritten rules, policies or customs outside the municipal code or for the city council to give its members privileges to appeal *not* "in compliance with this chapter."

A person cannot be a judge in his or her own cause. (E.g., *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 223; *Bonham's Case* (K.B. 1610) 77 Eng. Rep. 646, 652.) Our Supreme Court uttered a very strong statement on that great rule a little more than a century ago: "By section 170 of the Code of Civil Procedure it is provided that no justice, judge, or justice of the peace shall sit or act in any action or proceeding to which he is a party *or in which he is*

16

*interested.*  This is but an expression of the ancient maxim that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's sense of justice that it is said by Lord Coke to be a natural right *so inflexible that an act of parliament seeking to subvert it would be declared void.*"  (*Meyer v. City of San Diego* (1898) 121 Cal. 102, 104, second italics added.)

Strong language.  We will not assume that drafters of Newport Beach's Municipal Code intended to contravene a cardinal rule of justice in the absence of a clear statement of such remarkable intent.  No such statement exists.  In fact the "compliance with this chapter" language indicates the drafters of Newport Beach's Municipal Code did not envision any special customs (or rules or policies) for the special benefit of the city council itself.  This appears to have just been a practice that was followed unthinkingly.

Several other passages in the ordinance similarly point to a lack of intent to make an exception for city council members.  The need to state the "facts" in the notice of appeal is consistent with the prerequisite of being an interested party, i.e., someone who approaches the reviewing body with some knowledge of what has already happened based on the initial body's review of evidence.  The short deadline likewise points to appeal by someone who is aggrieved by the planning commission decision.

Our remarks here on the question of authorization may in fact be overkill, since Newport Beach does not even purport to assert that its own municipal code allowed Henn's appeal.  Rather, it points to a policy – custom would be a better word – of the city council letting its members appeal planning commission decisions.  The only written authority for this custom, interestingly enough, is the very document embodying the city's council's decision (Resolution 2013-75), which merely recites the city has a "long-standing policy and practice of not requiring Councilmembers to pay a filing fee because their appeals are taken for the benefit of the City's residents."

17

We note in passing the obvious ipse dixit nature of the language in Resolution 2013-75. The assumption that *by definition* a city council member who appeals is doing so "for the benefit" of the residents, as distinct from some personal bias, is certainly not based in logic. The *Clark* case, for example, convincingly demonstrates that council members can be very "interested" in their own appeals for reasons not related to altruistic concerns for other residents or the city as a whole. (See *Clark, supra*, 48 Cal.App.4th at pp. 1172 [noting conflict of interest by city council member because his own view would be obstructed by project].)

In any event, the exemption does not withstand the proverbial smell test. There's a fancy Latin phrase for that sort of thinking – *Quod principi placuit, legis habet vigorem* (what pleases the prince has the force of law) – but it's not one that is consistent with due process. (See Amos, *The Common Law and the Civil Law in the British Commonwealth of Nations* (1937) 50 Harv. L. Rev. 1249, 1254.)[5]

So we conclude that the city's incantation of a "policy and practice" in direct violation of its own code cannot conform that alleged policy and practice to due process. *Cohan's* observation about a council acting in an "arbitrary and high-handed" manner is applicable in this case as well: The city council violated the rules laid down in the city's own municipal code, then purported to exempt itself from that code by invoking some previously undocumented custom of ignoring those rules when it comes to council members themselves. Needless to say, changing the rules in the middle of the game does not accord with fundamentally fair process. (E.g., *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 532 [noting, in context of prospectivity issue, that the unfairness of changing "'the rules of the game' in the middle of a contest" is a

---

[5] "To all this the Roman law, as known and received by the Middle Ages, and as handed down to modern times, offers little or no counterpart. The public law of the Roman Republic had long been forgotten; the law set forth in Justinian's Corpus Juris was the law of an imperial dictatorship. Its most celebrated contribution to constitutional doctrine was the maxim *Quod principi placuit, legis habet vigorem* — 'The commands of the prince have the force of law.' Its reception involved the establishment of no institutions of independent judicature, of no guarantees for personal liberty, or for the due process of law." (Fn. omitted.)

common sense notion]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1194 [same]; *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 648 [refusing to apply law to "conduct preceding its effective date" because that would be "tantamount to an unfair change in '"the rules of the game"'" in the midst of a contest"].)

3. *BreakZone Distinguishable*

Newport Beach relies on *BreakZone, supra*, 81 Cal.App.4th 1205 as its main authority to uphold the trial court's decision to leave its city council's overturning of the planning commission intact. The case is distinguishable on crucial points.

In *BreakZone*, the Torrance city planning commission approved a project to convert a previously youth-oriented pool parlor to an adult-oriented establishment able to sell alcohol. The city's police department, however, perceived trouble in the application, noting that even as a youth-oriented pool hall, BreakZone was a "gathering spot for gang members" and recommended against the application. (*BreakZone, supra*, 81 Cal.App.4th at pp. 1209, 1213.) A city council member filed an appeal from the decision *using the city's standard appeal form*, saying he was appealing "[b]ased on Police Department recommendation" in order to "bring the matter in front of the entire Council." (*Id.* at p. 1213.) The city council then granted the appeal, and denied the application. (*Id.* at pp. 1219-1220.) The trial court denied the ensuing petition for writ of mandate and the appellate court affirmed.

But *BreakZone's* main focus on the issue of the possible bias of the city council member who filed the appeal was on whether the *mere fact* the council member had filed an appeal was itself enough to show an unacceptable probability of actual bias. (*BreakZone, supra*, 81 Cal.App.4th at p. 1235 [framing issue as whether "the fact that one council member filed the appeal and participated in and voted on that appeal is a violation of the common law of conflict of interest and requires issuance of a writ of mandate"].) After first framing the issue in terms of whether the fact the council member had filed the appeal was enough by itself to show a violation of due process, the

19

*BreakZone* court spent some considerable space knocking down the applicant's reliance on *Withrow v. Larkin* (1975) 421 U.S. 35, a federal Supreme Court professional discipline due process case involving a doctor's license. The point of *that* discussion was to try to establish that for a due process violation in an adjudicatory context to occur, there must be a "commitment to a result" – though the *BreakZone* court allowed that "even a tentative commitment" might do. (*BreakZone, supra*, 81 Cal.App.4th at p. 1236.) But, having made that concession, the *BreakZone* court added that "advance knowledge of adjudicative facts that are in dispute, as well as participation in the charging function" is not enough, alone, to show a due process violation. (*Ibid.*)

The applicant, naturally, also relied on *Cohan*, but the *BreakZone* court found *Cohan* distinguishable. And this is why *BreakZone* is so clearly not applicable to our case: At least twice, the *BreakZone* court emphasized that in contrast to *Cohan*, *the Torrance Municipal Code allowed city council members to appeal from planning commission decisions*. Said the *BreakZone* court: "In considering this question, we note first that, in contrast to the circumstances present in *Cohan*, the Torrance Municipal Code *specifically permits* the filing of an appeal from the decision of the planning commission by a member of the city council." (*BreakZone, supra,* 81 Cal.App.4th at p. 1239, italics added.)

The *BreakZone* court emphasized that fact again several times: "We thus are confronted with *the question left unanswered* in *Cohan*: If an individual member of a city council *follows a procedure set out in a properly drawn ordinance*, is he or she disqualified from participating in the subsequent hearing and voting on the matter?" (*BreakZone, supra*, 81 Cal.App.4th at p. 1240, italics added.) *BreakZone* was thus based upon a city code that expressly allowed appeal by a city council member. That is not our case.

Interestingly enough, the *BreakZone* court was willing to allow that the *Cohan* opinion at least "suggests" it *is* fundamentally unfair to have the person who files

20

an appeal actually sit as an adjudicator of that appeal. (*BreakZone, supra*, 81 Cal.App.4th at p. 1240.) But the *BreakZone* court did not feel that issue was properly before it. It asked, "Is it fundamentally unfair for the government official appealing the action to participate in the hearing on the appeal and vote on that appeal? [¶] *Cohan* suggests that it might be, but does not expand on that suggestion. Neither party cites cases that decide the question." (*BreakZone, supra*, 81 Cal.App.4th at p. 1240.)

With no guidance from the parties, *BreakZone* declined to attempt an answer to the question. Instead, the *BreakZone* court quoted a swath of the transcript of the city council meeting, its point being that the city council member who filed the appeal did *not*, contrary to the applicant's assertion, take "charge of and control[] the hearing." Instead, the mayor "exercised a firm hand over the proceedings," and there was "no indication in the record that [the city council member who filed the appeal] dominated the proceedings." (*BreakZone, supra*, 81 Cal.App.4th at p. 1240.) Just because that member was the first to speak did not show unfairness, because, having filed the appeal, it was "logical" to call on him first. (*Ibid.*)

We have looked for an indication in the *BreakZone* opinion that the court considered the council member's reference to the police department's concerns as some intimation of actual bias. We have found none. (See *BreakZone, supra*, 81 Cal.App.4th at pp. 1233-1241 [discussing issue of whether council member's "conduct" deprived applicant of "a fair hearing"].) It appears the precise point of the implication of citing the police recommendation as grounds for appeal was not raised by the applicant. Or, if raised, it was not considered by the *BreakZone* court. Or, perhaps the *BreakZone* court simply did not consider the issue worth the candle because it thought the city council member was simply *forwarding* on the police department's recommendation in a *disinterested* effort to give the city council its own chance to evaluate it. Indeed, some support for this reading of *BreakZone* may be found in the *BreakZone* court's implication that the council member had no "commitment to a result." (See *id*. at p. 1236.)

21

But we need not resolve that question.  What is clear is that *BreakZone* would not apply in the case before us now, even if the *BreakZone* court *had* confronted the police department's connection to the issue.  First, unlike *BreakZone* where authority of a council member to appeal a planning commission decision was specifically provided under the Torrance Municipal Code, the Newport Beach Municipal Code does not allow such appeals.  Second, unlike *BreakZone* where the council member was at least arguably not committed "to a result" as shown in the notice of appeal, here council member Henn was *strongly* – his word – committed to overturning the planning commission's decision.  Third, unlike *BreakZone*, where the council member did not "control" the city council meeting on the hearing of his own appeal, here council member Henn's speech after the close of the public comment section dominated the deliberation.  His presentation was orders of magnitude different from the other council members.  All of this removes our case from the ambit of *BreakZone*.

C. *Disposition*

If this case involved Henn's bias alone, *Nasha* would dictate simply telling the trial court to grant the petition for writ of mandate and send the appeal back to the Newport Beach City Council with instructions to reconsider the appeal of the planning commission's decision, sans Henn.  However, as we have explained, and as *Cohan* instructs, the city's municipal code never allowed this appeal in the first place.  Moreover, the *Cohan* court also specifically rejected the trial court's rationale that the improper appeal was harmless because interested parties (such as local residents) would surely have filed their own – proper – appeals.  Under *Cohan*, a city council's taking an appeal that is *not* authorized by the city's municipal code requires that the council's

22

decision be nullified, not just returned for reconsideration. (*Id*. at p. 561 [directions to enter a new order nullifying the Council's appeal to itself"].)

Based on *Cohan* and *Nasha*, the preliminary injunction was improvidently granted. It is hard to maintain the city's actions were likely to be upheld when it had no authority to act in the first place. So it seems to us the city council's decision must be nullified and the petition for writ of mandate granted.

Accordingly, the order granting the city's preliminary injunction is hereby reversed, and the trial court is further directed to vacate the order denying Woody's petition for writ of mandate and enter a new order granting it.

Woody's shall recover its costs in this combination appellate and writ proceeding.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.


23

Chapter 20.64
APPEALS

Sections:
20.64.010    Purpose.
20.64.020    Appeals.
20.64.030    Filing and Processing of Appeals.
20.64.040    Judicial Review of City Decision.

## 20.64.010 Purpose.

The purpose of this chapter is to provide procedures for the appeal of determinations and decisions of the Director, Zoning Administrator, Hearing Officers, and Planning Commission.  (Ord. 2010-21 § 1 (Exh. A)(part), 2010)

## 20.64.020 Appeals.

A.  Director.  Interpretations of the Director may be appealed to the Planning Commission.

B.  Zoning Administrator.  Decisions of the Zoning Administrator may be appealed to the Planning commission.

C.  Hearing Officer.  Decisions of a Hearing Officer may be appealed to the Council.

D.  Planning Commission.  Decisions of the Commission may be appealed to the Council.  (Ord. 2010-21 § 1 (Exh. A)(part), 2010)

## 20.64.030 Filing and Processing of Appeals.

A.  Eligibility.  Appeals may be initiated by any interested party.

B.  Timing and Form of Appeal.  An appeal shall be submitted in writing and shall state the facts and basis for the appeal.

1.  Filing an Appeal.  An appeal shall be filed with the Director or City Clerk, as applicable within fourteen (14) days following the date the action or decision was rendered unless a different period of time is specified by the Municipal Code (e.g., Title

19 allows ten (10) day appeal period for tentative parcel and tract maps, lot line adjustments, or lot mergers).

    a.  Appeals addressed to the Commission shall be filed with the Director on forms provided by the Department; and

    b.  Appeals addressed to the Council shall be filed with the City Clerk on forms provided by the Clerk.

    2.  Filing Fee.  An appeal shall be accompanied by the filing fee identified in the City's master fee schedule.

C.  Report, Scheduling, Noticing, and Conduct of Hearing.

    1.  The decision from which an appeal has been made has no force of effect as of the date on which the appeal is filed.  When an appeal has been filed, the Director shall prepare a report on the matter, including all of the application materials in question, and schedule the matter for a public hearing by the appropriate review authority identified in Section 20.64.020 (Appeals).

    2.  Notice of the hearing shall be provided, and the hearing shall be conducted, in compliance with Chapter 20.62 (Public Hearings).

    3.  Conduct of Hearing.

    a.  Review of an appeal from a decision of the Zoning Administrator or Commission shall be de novo.  Review of an appeal from a decision of a Hearing Officer shall be whether the findings made by the Hearing Officer are supported by substantial evidence presented during the evidentiary hearing.  On review, the Council may sustain, reverse, or modify the decision of the Commission or Hearing Officer, or remand the matter for further consideration, which remand shall include either specific issues to be considered or a direction for a new hearing.

    b.  The review authority is not bound by the decision that has been appealed or limited to the issues raised on appeal.

    c.  The review authority shall hear testimony of the appellant, the applicant, and any other interested party.

    d.  The review authority shall consider the same application, plans, and project-related materials that were the subject of the original decision, unless otherwise deemed relevant by the review authority.

D.  Decision on Appeal.

1.  As provided in this Zoning Code, the review authority may, based upon findings of fact about the particular case:

   a.  Affirm, affirm in part, or reverse the action, determination, or decision that is the subject of the appeal.  Adopted findings shall identify the reasons for the action on the appeal;

   b.  Adopt additional conditions of approval that may address issues or concerns other than those that were the basis of the appeal; or

   c.  Deny the permit approved by the previous review authority, even where the appellant only requested a change or elimination of one or more conditions of approval.

2.  If new or different evidence is presented on appeal, the Commission or Council may refer the matter to the previous review authority for further consideration.

3.  In the event of a tie vote by the review authority on an appeal, the decision being appealed shall stand.  (Ord. 2010-21 § 1 (Exh. A)(part), 2010)

**20.64.040 Judicial Review of City Decision.**

A person shall not seek judicial review of a City decision on a permit or other matter until all appeals to the Commission and Council have been first exhausted in compliance with this chapter.  (Ord. 2010-21 § 1 (Exh. A)(part), 2010)