Filed 4/8/20; Certified for Publication 5/8/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PETROVICH DEVELOPMENT COMPANY, LLC, et al., | C087283 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2016-80002289-CU-WM-GDS) |
| v. | |
| CITY OF SACRAMENTO et al., | |
| Defendants and Appellants; | |
| ERIC JOHNSON et al., | |
| Real Parties in Interest and Respondents. | |

In this appeal we consider the restraints imposed on city council members, who are normally policymakers and voices of their constituents, when they act in a quasi-judicial capacity as adjudicators of matters on appeal from an administrative body. Here, the Sacramento City Council (City Council) was called upon to act in such a capacity following an eight-to-three vote by the Sacramento Planning and Design Commission (Planning Commission) granting a conditional use permit for a gas station in the

1

shopping center zone of a local residential development. Real parties in interest appealed the decision to the City Council.[1] In such matters council members must be neutral and unbiased. The developers sued, asserting in the trial court that one City Council member was neither and entered deliberations on the issue with his mind already made up.[2] The trial court agreed and, upon review of the record, so do we. Accordingly, we affirm the order granting the petition for writ of mandate and ordering the city to rescind the decision on the appeal and hold a new hearing on the appeal at which the councilmember would be recused from participating.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2010, the City Council approved land use and zoning entitlements for the Curtis Park Village development. Curtis Park Village is a 72-acre planned unit development located at the corner of Crocker Drive and Sutterville Road, bounded by the railroad to the west and the Curtis Park residential neighborhood to the east.[3] The development includes single- and multi-family residential housing plus retail and commercial areas, including a shopping center zone in the southern commercial area.

On September 10, 2014, Petrovich applied for a conditional use permit to construct and operate a gas station in the shopping center zone. The proposed facility would have eight dispensers and 16 pumps, a covering canopy, and a convenience store kiosk. The gas station was to be an extension of the services offered by Safeway, the

---

[1] Real parties in interest are Eric Johnson, Andrea Rosen, and Sierra Curtis Neighborhood Association.

[2] We refer to the developer entities—Petrovich Development Company, LLC, PDC Construction Co., Inc., and Calvine & Elk Grove-Florin, LLC—as Petrovich.

[3] Councilmember Jay Schenirer has been a resident of Curtis Park since 1990 and has represented this neighborhood as part of his district since his election to the City Council in 2010.

anchor tenant in the shopping center, and was a requirement of the lease between Petrovich and Safeway.[4] The shopping center zone allowed a gas station at this location subject to a conditional use permit.[5]

In 2014 and 2015, Eric Johnson, president of the Sierra Curtis Neighborhood Association, submitted a series of letters to the Planning Commission on behalf of the association opposing the proposed gas station.[6]

In May and June 2015, Planning Commission staff submitted reports to the commission recommending approval of a conditional use permit for the gas station. The reports noted that the Planning Commission had approval authority over the conditional use permit, but its decision could be appealed to the City Council. Early project notifications had been sent to local neighborhood and community associations, including the Sierra Curtis Neighborhood Association. Staff "received comments both in support of and in opposition to the proposed gas station. [Citation.] The key concerns of those who have contacted staff have been traffic, health and safety, land use, and aesthetics." The reports analyzed each area of concern and concluded that the gas station would not

---

[4] Safeway operates a loyalty program that rewards members with a discount on fuel price.

[5] "A conditional use permit is administrative permission for uses not allowed as a matter of right in a zone, but subject to approval. [Citation.]" (*Sounhein v. City of San Dimas* (1996) 47 Cal.App.4th 1181, 1187; *The Park at Cross Creek, LLC v. City of Malibu* (2017) 12 Cal.App.5th 1196, 1209; see also Sac. City Code, § 17.108.040 [" 'Conditional use permit' means a zoning instrument used primarily to review the location and conduct of certain land uses that are known to have a distinct impact on the area in which they are located, or are capable of creating special problems for bordering properties, unless given special attention. A conditional use permit is a discretionary permit and is not the automatic right of an applicant"].)

[6] Councilmember Schenirer is a member and former board member of the Sierra Curtis Neighborhood Association.

have the negative impacts raised in comments opposing the application. Staff acknowledged that "[t]his item is considered to be controversial."

On June 11, 2015, by an eight-to-three vote, the Planning Commission approved a conditional use permit to construct and operate a gas station with eight dispensers and 16 pumps in the shopping center zone of Curtis Park Village. Real parties in interest appealed the decision to the City Council asserting, among other grounds, that emissions from the gas station were detrimental to public health and the gas station was inconsistent with Curtis Park Village development guidelines. Further, real parties contended that the "overriding goal of the development guidelines for this infill development was to ensure a high degree of compatibility with the existing neighborhood and to blend in as much as possible." They maintained a gas station "contradicts the goal of maximizing opportunities for efficient transit provided by public transportation" and thwarts the goal of "an intimacy of scale and sense of community that will invite pedestrian use and interaction." Acknowledging that a gas station is an allowed use in the shopping center zone, real parties insisted that fact was irrelevant: "A gas station requires a conditional use permit precisely so the City can judge each of these specific proposed uses on a site-specific basis."

On June 29, 2015, Jacques Loveall, president of UFCW 8 - Golden State, the union representing grocery store employees in Sacramento, wrote the Sacramento city attorney regarding the proposed gas station. Loveall asserted that Safeway (1) needed the gas station to be competitive and pay union wages, (2) had conditioned its lease with Petrovich on a permit for the gas station, and (3) would not come to Curtis Park Village if the permit was denied. Loveall claimed that "Councilmember Jay Schenirer represents the Curtis Park neighborhood and opposes the Safeway fuel center" and "has taken unprecedented and aggressive steps to block the issuance of the [conditional use permit]." Loveall cited a statement by Councilmember Schenirer at a meeting of the Sierra Curtis Neighborhood Association, " 'I don't think a gas station fits in with what was originally

4

proposed,' " as quoted in Viewpoint, the association's publication. Lovell concluded, given "that the City Council's sole remaining role is to act in a quasi-judicial capacity as the body to hear the [conditional use permit] appeal filed by gasoline opponents, we seek your legal guidance as to whether the Councilmember must recuse himself from further engagement on the appeal now before the City Council."

On July 2, 2015, the city attorney responded that Loveall had "not established an unacceptable probability of actual bias on the part of Councilmember Schenirer regarding the Safeway fuel center project, which is the legal standard for recusal when the City Council acts in a quasi-judicial capacity." The city attorney continued that, "[w]hile Councilmember Schenirer did express an opinion about the project at the November 18, 2014, public meeting, he didn't attack the project; he didn't advocate against the project; he didn't indicate that he had made up his mind about the project; and, he didn't take a position against the project. In fact, at a public meeting that he organized several months later to discuss the project, '[he] said that he couldn't take a position on the merits of the gas station proposal "because I need to talk to my colleagues and vote on the issue when it comes to the City Council." ' " These remarks were also published in Viewpoint. The city attorney concluded that Councilmember Schenirer was not required to recuse himself from participating in the appeal.

On November 1, 2015, Councilmember Schenirer sent a text message to Eric Johnson: "Can you get together tomorrow night at 7. I'd like to put a few heads together to talk thru cpv [Curtis Park Village]."

On November 3, 2015, Scott Whyte, an advisor to then-Mayor Kevin Johnson, sent an e-mail to the mayor providing a "[q]uick update" on Curtis Park Village. Whyte wrote, "JS is confident that he has the votes (if not a unanimous one) to deny the approval." Whyte advised that "JS will be popping-in [*sic*] this morning to discuss with MKJ."

On November 10, 2015, at a City Council proceeding, Councilmember Schenirer addressed statements attributed to him to the effect that he had spoken to all the other councilmembers, who assured him that they would vote as he wanted on the gas station permit appeal. Councilmember Schenirer acknowledged that he had been asked about other councilmembers at recent public meetings. He commented that what he said was Paul Petrovich had said that he had talked to other councilmembers, who said they would follow Councilmember Schenirer's lead. Councilmember Schenirer concluded, "I never said that I've talked to all the councilmembers. I haven't talked to all the councilmembers." Councilmember Angelique Ashby added, "I think my colleagues would like to just say that it's not predetermined. He [Councilmember Schenirer] hasn't spoken to all of us." Councilmember Ashby reiterated, "So anyway we want you to know it's not predetermined. He [Councilmember Schenirer] hasn't talked to everybody."

On the same day, Councilmember Schenirer sent an e-mail to Mayor Johnson, copied to Whyte, titled: "Curtis Park Village Talking points."

The e-mail included the following points:

"1. The Curtis Park neighborhood welcomes a Safeway grocery store and the council person stands ready to make the store successful. [¶] . . . [¶]

"3. There was a deal between the developer and the neighborhood in 2010 that laid out the framework for agreed land uses. It was negotiated by the previous councilwoman and did not include a fuel center. . . . [¶] . . . [¶]

"5. A Safeway representative . . . told a crowded room of 400 neighborhood residents the need for the fuel center was because the new Raley's would have one and Safeway would need it to remain competitive. Raley's has submitted their plans to the City and the site does not include a fuel center.

"6. The recent organizing actions have attempted to divide a community along social economic and racial lines. Outreach was not done to or through the neighborhood

6

association of Oak Park.  Safeway and the developer have never been to the Oak Park community in the past.

"Bottom line - want to help Safeway be successful.  Can we do this without the fuel center.  [*sic*]"

On November 11, 2015, Councilmember Schenirer texted Eric Johnson, "Are you all planning any visits to council members?  If so, I have suggestions."  Johnson responded, "Suggest away!"  Councilmember Schenirer texted back, "I'll call you later."

On November 12 and 13, 2015, Eric Johnson sent identically worded e-mails to Councilmembers Allen Warren, Rick Jennings and Jeff Harris, asking to speak with each of them in person about the gas station and "clear up some misconceptions about the Sierra Curtis Neighborhood Association's thoughts on the matter prior to the vote on the 17th."  Eric Johnson's e-mails made points similar to Councilmember Schenirer's "Talking points" sent to Mayor Johnson, including:  (1) "we'd be thrilled to have Safeway in the shopping center"; (2) "the developer has attempted to pit one neighborhood against another"; (3) "the Curtis Park neighborhood had an agreement about the development, with the developer Paul Petrovich, five years ago" but "[o]nly recently, and with no warning, did he decide he wanted a gas station"; and (4) "[t]he Raley's expansion on Freeport will not have a gas station."

On November 15, 2015, Eric Johnson texted Councilmember Schenirer, "Will pdc [Petrovich] speak first on Tuesday, or us?"  Councilmember Schenirer replied, "You.  First staff then you then pdc."

On November 16, 2015, Whyte sent an e-mail to himself attaching a document titled "Third-Party Appeal: Curtis Park Village Fuel Center │ City Council Meeting."  The agenda of the document was referred to as a "Discussion Calendar" on the subject of the gas station.

Under the heading "Sequencing," the document set forth the order of presentation at the appeal hearing on November 17, 2015:  first city staff, then the Sierra Curtis

7

Neighborhood Association, then Petrovich, followed by public comment periods for supporters and opponents of the gas station. The final step was: "JS punches up to make the motion, Hansen seconds: *I move to reject the staff recommendation and to deny the conditional use permit for the Curtis Park fuel center.*"

Next, the documents listed "Talking Points":

"I think we've heard overwhelming sentiment tonight from the community that we all want Safeway to locate here locally in Curtis Park  [¶] . . . [¶]

"When we voted to approve this development 5 years ago, the neighborhood and the developer reached an important agreement

"That agreement <u>did not</u> include a fuel center

"Additionally, we've heard a lot tonight about the commitment of 200 jobs to the Oak Park community, one in [*sic*] which I obviously care dearly about

"However, as we've seen tonight, that commitment is not the hard and fast commitment that a lot of us we're [*sic*] hoping for  [¶] . . . [¶]

"I'm still very hopeful that Safeway will end up choosing to locate here even without a fuel center and I think I can speak for all of my colleagues when I say we would welcome Safeway with open arms

"Safeway's main competitor, Raleys, is also building a store just down the road without a fuel center

"With that said, I will support the motion on the table as well."

On November 17, 2015, the afternoon before the hearing that evening, Councilmember Schenirer texted Eric Johnson, "FYI.  Just found out Paul [Petrovich] will go before you.  Probably good to be able to respond."  Johnson replied, "Great.  I'll be scribbling furiously," to which Councilmember Schenirer responded, "As will I."

At the outset of the hearing on November 17, 2015, Mayor Johnson explained the sequence of presentations—staff, then Petrovich, then real parties, then public comment

8

from each side—as outlined in the document attached to Whyte's e-mail from the previous day and Councilmember Schenirer's text to Eric Johnson that afternoon.

At the end of public comments, Councilmember Schenirer spoke at length, concluding that "I just can't support in any way, shape or form putting a gas station that close to a residential area, and frankly if we never have a new gas station again I would be okay with that, I would be okay with that." He then made a motion to deny the conditional use permit for the gas station. Mayor Johnson called on Councilmember Steve Hansen, who, after his comments, seconded the motion. The City Council, including Mayor Johnson, voted seven to two to deny the conditional use permit.

Petrovich filed a petition for writ of mandate and complaint for declaratory and injunctive relief against the city and real parties to rescind the denial of the conditional use permit for the Safeway gas station. Petrovich alleged multiple claims, including that respondents "were improperly influenced by inadmissible factors, including bias and hostility, ex parte communications, arguments, political pressure, threats and inducements outside the public record, had improperly reached a decision before the public hearing was even opened, and wrongfully deprived Petitioners of their rights to fair and impartial quasi-adjudicatory hearing and to due process of law, with no rational basis or justification."

In ruling on the petition, the trial court stated that Councilmember Schenirer's membership in the Sierra Curtis Neighborhood Association was not evidence of bias. Further, the court said that, while the "talking points" authored by Councilmember Schenirer were "suggestive" that he considered voting "no" on the conditional use permit and Whyte's similar e-mail was "suspicious," these items fell short of " 'concrete facts' demonstrating 'unacceptable probability of actual bias.' "

However, considering the facts as a whole, the trial court found that "Councilmember Schenirer, in the days before the November 17, 2015 hearing, demonstrated an unacceptable probability of actual bias." His "authoring a 'Talking

9

Points' memorandum that suggests he intends to vote 'no' on the [conditional use permit], and his multiple text message exchanges with Eric Johnson, SCNA [Sierra Curtis Neighborhood Association] president, go beyond mere exchanges of information with a constituent. Instead, such activities suggest Councilmember Schenirer began coaching Eric Johnson on how to prosecute the SCNA appeal. . . . Further, the emails sent from Eric Johnson to Councilmembers bear a remarkable resemblance to the 'Talking Points' document authored by Councilmember Schenirer. These actions go beyond mere membership in an organization [citation] and instead are akin to advocating on behalf of an appellant [citation]." The trial court concluded that, "in the days preceding the hearing, Councilmember Schenirer was no longer a neutral, unbiased decisionmaker. [Fn. omitted.]"

The court granted the petition and ordered the city to rescind the decision on the conditional use permit and hold a new hearing. The court directed Councilmember Schenirer to recuse himself from participating in the new hearing.[7]

## DISCUSSION

### *Standard of Review*

"The issuance of a conditional use permit is a quasi-judicial administrative action reviewed under administrative mandamus procedures. [Citations.]" (*Harrington v. City of Davis* (2017) 16 Cal.App.5th 420, 434.) "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; *whether there was a fair trial*; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b), italics added.)

---

[7] In light of the ruling granting the petition, the trial court denied the complaint for declaratory relief. Also, since the court vacated the vote, it did not address Petrovich's other arguments.

Whether Petrovich received a fair hearing before the City Council is a legal question which we review de novo.  (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482 (*Nasha*); *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169 (*Clark*).)  " ' "There might be foundational matters of fact with respect to which the trial court's findings would be conclusive on appeal if supported by substantial evidence.  However, the ultimate questions, whether the agency's decision was . . . unlawful or procedurally unfair, are essentially questions of law." ' "  (*Clark, supra*, at p. 1169, quoting *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443.)

*Unacceptable Probability of Actual Bias*

City council members wear multiple hats.  It is commonly understood that they function as local legislators.  But sometimes they act in a quasi-adjudicatory capacity similar to judges.  (*Woody's Group, Inc. v. City of Newport Beach* (2015) 233 Cal.App.4th 1012, 1021 (*Woody's*).)  Hearing and deciding an appeal of a conditional use permit is one of the times that a city council acts in a quasi-adjudicatory capacity.  (*Ibid.*)

"[W]hen functioning in such an adjudicatory capacity, the city council must be 'neutral and unbiased.' "  (*Woody's, supra*, 233 Cal.App.4th at p. 1021, quoting *BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1234 (*BreakZone*); see also Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2019) ¶ 3:426, at p. 3-70 ["A decisionmaker must be unbiased (meaning that the decisionmaker has *no conflict of interest*, has *not prejudged* the specific facts of the case, and is *free of prejudice* against or in favor of any party)"].)  "[A]llowing a biased decision maker to participate in the decision is enough to invalidate the decision." (*Woody's, supra*, at p. 1022; *Nasha, supra*, 125 Cal.App.4th at p. 484; *Clark, supra*, 48 Cal.App.4th at p. 1171.)

11

"The law does not require the disappointed applicant to prove actual bias. Rather, there must not be ' " 'an unacceptable probability of actual bias' " ' on the part of a municipal decision maker." (*Woody's, supra*, 233 Cal.App.4th at p. 1022, citing *Nasha, supra*, 125 Cal.App.4th at p. 483; *BreakZone, supra*, 81 Cal.App.4th at p. 1236.) However, "a party seeking to show bias or prejudice on the part of an administrative decision maker [must] prove the same with concrete facts." (*BreakZone, supra*, at p. 1237.) " ' "Bias and prejudice are never implied and must be established by clear averments." ' " (*Ibid.*, quoting *Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 792.) "A party must show either actual bias or show a situation in which ' "experience teaches that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable." ' " (*Hauser v. Ventura County Bd. of Supervisors* (2018) 20 Cal.App.5th 572, 580 (*Hauser*), quoting *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.)

As a threshold matter, we conclude, as did the trial court, that Councilmember Schenirer's membership in the Sierra Curtis Neighborhood Association did not establish bias. "[B]ias in an administrative adjudicator must be established with concrete facts rather than inferred from mere appearances." (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1340; *Hauser, supra*, 20 Cal.App.5th at p. 578; *Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 219-220.)

Equally, Councilmember Schenirer's statement quoted in the letter from UFCW 8 - Golden State to the city attorney, i.e., that a gas station does not fit in the development as originally proposed, did not disqualify him from voting on the issue.[8] The decision on

---

[8] In addition, Councilmember Schenirer was careful to point out that he could not announce a definitive position before voting. However, his "Talking points," a written compilation of facts militating against the gas station, contradicted prior comments

siting a gas station in Curtis Park Village was plainly a matter of concern for members of the local community. "A councilman has not only a right but an obligation to discuss issues of vital concern with his constituents and to state his views on matters of public importance." (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 780.)

In the same vein, that Councilmember Schenirer lived in the Curtis Park residential neighborhood adjacent to the proposed gas station was not a disqualifying fact. There was no evidence that Councilmember Schenirer's particular residence would be impacted by the gas station more than any other in the neighborhood. In *Clark, supra*, 48 Cal.App.4th at page 1172, the court held that the petitioners were deprived of a fair hearing in part because a councilmember voted against a construction project that would interfere with his ocean view. A similar state of affairs does not exist here.

Were these the only "concrete facts," they would not show an unacceptable probability of actual bias on the part of Councilmember Schenirer. (*BreakZone, supra*, 81 Cal.App.4th at p. 1236.) However, in the run up to the City Council hearing and vote, Councilmember Schenirer crossed the line into advocacy against the project.

There was evidence that Councilmember Schenirer was counting—if not securing—votes on the City Council against the gas station and communicating an "update" on that score to Mayor Johnson. Whyte's statement to the mayor two weeks before the hearing that Councilmember Schenirer was "confident" he had a majority, if not unanimous, vote to deny the conditional use permit shows his prehearing commitment to achieving that outcome. His denial a week before the hearing that he had not spoken to *all* his colleagues about voting against the gas station, which was echoed by Councilmember Ashby, was a "negative pregnant" that constituted an admission that he

attesting to his impartiality. (See *Woody's, supra*, 233 Cal.App.4th at p. 1023 [councilmember's "speech to the council [in opposition to planning commission's decision] had been written out beforehand, wholly belying his own self-serving comment at the hearing that 'I have no bias in this situation' "].)

13

had spoken to less than all of them on the subject. (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021 ["a 'negative pregnant' " is " 'a denial of the literal truth of the total statement but not of its substance' "].) The final vote by a majority to deny the permit confirms both Councilmember Schenirer's statement to Whyte and the negative pregnant of his denial.

Councilmember Schenirer prepared a compilation of facts that amounted to a presentation against the gas station, which the councilmember referred to as "Talking points." The only conceivable purpose for this list was to assist advocacy in opposition to the gas station. (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1275, col. 1 ["talking point" defined as "something that lends support to an argument"]; Dictionary.com <https://www.dictionary.com/browse/talking-point> [as of Apr. 1, 2020], archived at <https://perma.cc/BK7A-TY7S> ["a fact or feature that aids or supports one side, as in an argument or competition"].) E-mailing the talking points to the mayor and his advisor Whyte suggests both behind-the-scenes advocacy against the gas station, as well as organizing the presentation at the hearing to obtain a "no" vote on the gas station. Councilmember Schenirer's efforts to organize opposition to the gas station is further confirmed by Whyte's document—also titled "Talking Points"—prepared the day before the hearing, which reflects elements of Councilmember Schenirer's talking points in a format for the mayor to use at the hearing in order to carry a motion to deny the permit. Indeed, the "Talking Points" are preceded in the document with an outline of the "Sequencing" of the hearing, i.e., a motion to deny the permit made by Councilmember Schenirer, seconded by Councilmember Hansen, and carried by a majority vote (including Mayor Johnson), which is what in fact occurred at the hearing.

Moreover, following texts by Councilmember Schenirer to Eric Johnson in the weeks before the hearing asking him "to put a few heads together to talk thru" Curtis Park Village and offering suggestions for prehearing presentations to other councilmembers, elements of Councilmember Schenirer's talking points turn up in the

14

substance of Eric Johnson's letters opposing the gas station sent to other councilmembers. As the trial court put it, this was evidence that Councilmember Schenirer was "coaching" Eric Johnson on how to prosecute the appeal.

Finally, Councilmember Schenirer himself made the motion to reverse the decision of the Planning Commission. The court in *Woody's*, determined that this was another concrete fact indicating bias. "[L]ike the biased member in *Nasha*, Henn was the one to propose the motion that the lower decision be overturned." (*Woody's, supra*, 233 Cal.App.4th at p. 1023, citing *Nasha, supra*, 125 Cal.App.4th at p. 477.) In this instance, this fact is an even more compelling indication of probable bias, because the document prepared by Whyte the day before the hearing showed that this sequence was planned.

These "concrete facts" establish that Councilmember Schenirer was biased. He took affirmative steps to assist opponents of the gas station conditional use permit and organized the opposition at the hearing. Councilmember Schenirer acted as advocate, not a neutral and impartial decisionmaker, and should have recused himself from voting on the appeal. Because he did not, Petrovich did not receive a fair hearing.[9]

---

[9] Buried in the opening brief, the city states: "Furthermore, in accordance with the 'harmless error' standard established by Government Code section 65010, Councilmember Schenirer's vote was not outcome determinative. Thus, even if, for sake of argument, his vote should have been disregarded, a clear majority of the City Council voted to deny the [conditional use permit] application." The city has forfeited this issue on appeal. An appellant must "[s]tate each point under a separate heading or subheading summarizing the point . . . ." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v Reynoso* (2017) 10 Cal.App.5th 172, 179.) Moreover, the purpose of Government Code section 65010, formerly section 65801, is to "terminat[e] recurrence of judicial decisions which had invalidated local zoning proceedings for technical procedural omissions." (*City of Sausalito v. County of Marin* (1970) 12 Cal.App.3d 550, 557-558.) Councilmember Schenirer's assistance to opposition to the gas station in obtaining the City Council's vote against the project was not a mere technical error that can be deemed harmless or nonprejudicial, but rather a

## DISPOSITION

The judgment is affirmed.  Petrovich shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

_____/s/_____
RAYE, P. J.

We concur:

_____/s/_____
BLEASE, J.

_____/s/_____
KRAUSE, J.

---

fundamental flaw in the process.  (*Souhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, 1260.)

16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PETROVICH DEVELOPMENT COMPANY, LLC, et al., <br><br>    Plaintiffs and Respondents, <br><br>    v. <br><br> CITY OF SACRAMENTO et al., <br><br>    Defendants and Appellants; <br><br> ERIC JOHNSON et al., <br><br>    Real Parties in Interest and Respondents. | C087283 <br><br> (Super. Ct. No. 34-2016-80002289-CU-WM-GDS) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge.  Affirmed.

Susana Alcala Wood, City Attorney, Brett M. Witter, Deputy City Attorney; Meyers, Nave, Riback, Silver & Wilson, Amrit S. Kulkarni and Shaye Diveley for Plaintiffs and Appellants.

Rutan & Tucker, David P. Lanferman, Mathew D. Francois; Smith, McDowell & Powell, C. Jason Smith and Brad A. McDowell for Defendants and Respondents.

No appearance for Real Parties in Interest and Respondents.

1

THE COURT:

The opinion in the above-entitled matter filed April 8, 2020, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


_____/s/_____
RAYE, P. J.


_____/s/_____
BLEASE, J.


_____/s/_____
KRAUSE, J.