Filed 12/16/24  Wilson v. City of Del Mar CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JANET WILSON et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF DEL MAR,<br><br>    Defendant and Respondent;<br><br>MATTHEW J. ZISKIN et al.,<br><br>    Real Parties in Interest. | D082578<br><br><br>(Super. Ct. No. 37-2022-00005589-CU-WM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

The Law Office of Richard R. Rice and Richard R. Rice for Plaintiffs and Appellants.

Devaney Pate Morris & Cameron, William C. Pate and Wendy L. House for Defendant and Respondent.

No appearance for Real Parties in Interest.

Nigel Hook and Janet Wilson seek to regain the ocean view from their primary living room that is blocked by trees in Chelsea B. Ziskin and

Matthew J. Ziskin's yard. When the City of Del Mar denied the Hook-Wilsons' application to restore that view after finding they (1) topped the trees in 2015 without permission and (2) did not prove they had an ocean view before the unauthorized topping, the Hook-Wilsons petitioned the superior court for a writ of administrative mandate. They now appeal the denial of that writ on three main grounds.

First, the Hook-Wilsons claim they were deprived a fair hearing before the City Planning Commission and Council. But both bodies considered all evidence presented, and the Hook-Wilsons have not proven bias based on one Planning Commission member's comment about witnesses' memories. Their other claims of error going to fairness are forfeited as underdeveloped or untimely.

Second, they assert in an opening brief heading that the City failed to proceed in a manner required by law without explaining how. To the extent they make such claims elsewhere in the briefing, some are forfeited because the Hook-Wilsons did not raise them until reply or did not provide any supporting authority. And we disagree the Planning Commission used an evidentiary standard at odds with the Del Mar Municipal Code because it considered written information and oral testimony as well as photographic evidence.

Third, the Hook-Wilsons argue the City's findings are not supported by the evidence. Reviewing the administrative record for substantial evidence, we conclude the City did not abuse its discretion in finding the Hook-Wilsons did not prove their claim of an ocean view from their living room before topping the trees without permission in 2015.

Thus, we affirm.

I.

A.

The City has a scenic view ordinance that provides relief under certain circumstances for property owners whose views have become unreasonably obstructed by vegetation on nearby property. (Del Mar Mun. Code, § 23.51.030, subd. (A).) To establish a right to a scenic view, applicants must prove the view existed when they bought their home or in the last ten years, whichever is shorter. (*Ibid.*) The Planning Commission considers and rules on scenic view applications. (§ 23.51.040(G).)

Applicants have the right to appeal Planning Commission decisions to the City Council. (§ 23.51.100.) The City Council conducts an initial consideration to decide whether to hold a de novo hearing. Two votes are required to proceed to a de novo hearing. Challenges to the City's decisions are subject to judicial review under Code of Civil Procedure sections 1094.5 and 1094.6. (§ 23.51.100.)

B.

The Hook-Wilsons have resided in Del Mar since 1999. From then until 2015, they claim to have enjoyed an ocean view from their living room over the roof of a neighboring property.

A neighbor's line of 17 Eugenia trees separates the neighbor's yard and the Hook-Wilsons' home. The Hook-Wilsons assert the previous owner, Jane M., always let their gardener trim or "top"—a more severe cutting that eliminates the upper portion of the plant—the trees so as not to exceed the height of her roof.

After Jane passed away in 2015, her stepson sold the property to the Ziskins. While the property was in escrow, the Hook-Wilsons—without permission from either Jane's stepson or the Ziskins—had the trees topped.

3

Since purchasing the neighboring property, the Ziskins have not permitted the Hook-Wilsons to trim the trees, which have grown to block the Hook-Wilsons' ocean view from their living room.

C.

The Hook-Wilsons applied to the City to restore their view. In support, they submitted, among other things, (1) photographs showing the ocean view from their living room in 2015; (2) letters from their tree trimmer and gardener about topping the trees "many times" before 2015; (3) witness statements about seeing the ocean view from the Hook-Wilsons' living room before 2015, including at a party in 2012; and (4) satellite images they say showed a similar topping of the trees in 2012.

The Ziskins opposed the application by arguing the view did not exist until the Hook-Wilsons "aggressively cut" the trees in 2015 without notice or permission. Their submission included (1) photographs of the trees in 2015 before and after the topping; (2) a letter from Jane's stepson confirming the Hook-Wilsons lacked permission to cut the trees; (3) a longtime neighbor's letter saying she had never seen the trees "cut to that extent"; and (4) a letter from Jane's gardener about how the trees "had always grown wild" from 2006 to 2015 and he did not recall the trees "ever being trimmed" before 2015.

The Planning Commission held a hearing, at which Wilson, the Ziskins, and others spoke. Wilson explained Hook obtained Jane's permission to top the trees in the fall of 2014 and relied on satellite images from 2012 to prove the trees were "topped periodically." When a Planning Commission member asked Wilson if she had any photographic evidence of the view taken before 2015, Wilson pointed to the satellite imagery as "irrefutable."

Jane's stepson, who visited the house weekly between 2005 and 2015, countered that the trees "had never been trimmed" other than remedial

4

trimming and shaping by Jane's gardener "from 1996 through 2015." According to him, the trees were "never" topped to the degree they were in 2015, not even in 2012.

A neighbor who had regular dinners at the Ziskins' property for decades never saw the trees trimmed like in 2015, and she described the trees as "pretty wild." That same neighbor told the Planning Commission the authors of the letters submitted in support of the Hook-Wilsons' view were all employees of or "at some point" had a financial "relationship" with the Hook-Wilsons.

After discussing and weighing the evidence, the Planning Commission unanimously denied the Hook-Wilsons' application because they did not provide "sufficient documentation" of a preexisting scenic view to restore. The Planning Commission found the Hook-Wilsons topped the trees in 2015 without permission and submitted photographic evidence of the view from their living room taken afterward. The Planning Commission credited Jane's stepson and the neighbor's testimony about the historical extent of the trees' trimming.

### D.

The Hook-Wilsons appealed the denial to the City Council. Among other things, they argued the Planning Commission abused its discretion by "reject[ing]" their witness statements and satellite images "prov[ing]" the trees "had been topped in 2012." In addition, the Hook-Wilsons offered "new evidence, including new witnesses" who "saw the ocean view from [the] living room" "numerous times between 1999 and March 2015" and a preliminary report by a geospatial intelligence expert.

Before the initial consideration, City staff prepared an agenda report recommending the City Council uphold the denial of the Hook-Wilsons' view

application. At the time, the City had not received the geospatial intelligence expert's report. After the staff report issued but days before the initial consideration, the Hook-Wilsons submitted two slideshows from their expert, his summary, and his resume.

At the initial consideration hearing, two of the five councilmembers recused themselves. A councilmember explained the process, including how the City Council would vote whether to hold a de novo hearing without any discussion among themselves. He assured participants the City Council "received all" information submitted after the staff report and had "ample opportunity to review" it. After hearing from various speakers, the City Council voted 2-1 against setting the matter for a de novo hearing, thus upholding the Planning Commission's decision.

E.

The Hook-Wilsons petitioned the trial court for a writ of administrative mandamus against the City under Code of Civil Procedure section 1094.5 to (1) set aside the denial of their scenic view application and (2) direct the City to adopt a resolution "requiring the restoration and preservation of [their] scenic view."

The trial court denied the petition.

II.

Code of Civil Procedure section 1094.5 lets courts "inquir[e] into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (Code Civ. Proc., § 1094.5(a).) We review the administrative decision to determine if it was "without, or in excess of, jurisdiction; whether there was a fair trial; and

6

whether there was any prejudicial abuse of discretion." (*Id.*, subd. (b).) An abuse of discretion occurs "if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*)

Here, the Hook-Wilsons argue the City (1) failed to provide a fair hearing and abused its discretion by (2) failing to proceed in the manner required by law and (3) making findings not supported by the evidence. We first address the City's abandonment argument before turning to the merits of the appeal.

A.

The City argues we "can and should treat the entire appeal as abandoned" because the Hook-Wilsons have forfeited their claims by not arguing how the trial court (1) prejudicially erred or (2) applied the wrong standard of review. We observe the Hook-Wilsons did not address these arguments in reply beyond asserting they "have properly framed numerous issues for appeal."

We note throughout this opinion where the Hook-Wilsons have forfeited certain arguments but otherwise exercise our discretion to consider their appeal. In addition, while we have considered all adequately developed arguments the Hook-Wilsons separately identified under an appropriate heading in their opening brief, to the extent they have asserted additional arguments we have not addressed, they are forfeited. (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

B.

The Hook-Wilsons contend the City failed to provide a fair hearing before both the (1) Planning Commission and (2) City Council. We disagree.

7

A challenge to the procedural fairness of an administrative hearing is a question of law we review de novo—not for substantial evidence as the City suggests. (*Boermeester v. Carry* (2023) 15 Cal.5th 72, 85.)

1.

The Hook-Wilsons offer two reasons why the Planning Commission hearing was unfair. Neither persuades us.

First, according to the Hook-Wilsons, the Planning Commission members' judgment was "so tainted" by allegations of unauthorized trimming in 2015 that they could not "fairly" assess the evidence showing "an extensive trimming occurred in 2012." Yet the Planning Commission members did not, as the Hook-Wilsons claim, ignore their satellite images and witness statements.

Rather, one member noted how the satellite images "might be indicia of some facts, but not what we're looking for here" because the arial images of the trees did not establish "an ocean view from the [Hook-Wilsons'] primary living area, their living room." The Hook-Wilsons themselves concede the satellite images "do not provide an eye[-]level depiction of the view."

The witness statements, meanwhile, gave one member "some pause" not because of the 2015 unauthorized trimming, but because those witnesses "have had or continue to have [a] financial relationship with the Hook/Wilsons." Further, a Planning Commission member credited the statements of Jane's stepson and a neighbor to "reinforce[ ]" his conclusion that "if there was any trimming before, it certainly would not have been to the extent of what was done in 2015" such that the Hook-Wilsons' witness statements and satellite images did not establish a view. That the Planning Commission, after weighing the evidence, did not find in the Hook-Wilsons' favor does not render the proceeding procedurally unfair.

8

Second, the Hook-Wilsons point to an "unfounded and ridiculous statement" by a Planning Commission member they claim is, "by itself, an indication of bias." Specifically, in reference to those who attended a party at the Hook-Wilson home in 2012 and submitted statements attesting to an ocean view, a Planning Commission member shared how he "begin[s] to see lovely sunsets" after a "second glass of wine" and opined how "their memory may[ ]be as suspect as mine has been under similar circumstances." The Hook-Wilsons do not explain how that statement constitutes bias. The two cases on bias they cite, which address when adjudicators also conducted investigative functions or testified to unsubstantiated facts in the proceeding, do not apply here. (See *Withrow v. Larkin* (1975) 421 U.S. 35, 47; *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351.) Besides, rulings against a party "are not grounds for a finding of bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) Nor are "[m]ere expressions of opinion" about the individuals in this case "based on observation of the witnesses and evidence." (*Ibid.*)

Thus, the Hook-Wilsons have not met their burden to prove error based on the purported unfairness of the Planning Commission hearing.

2.

The Hook-Wilsons' fairness arguments about the initial consideration before the City Council fare no better.

To start, though the Hook-Wilsons claim it "may reasonably be inferred" the allegations about the unauthorized tree trimming in 2015 similarly "tainted the City Council's consideration," that argument fails for the reasons stated above.

Next, the Hook-Wilsons claim they were deprived a fair hearing when the City Council did not continue the hearing to consider the post-staff report

9

evidence they submitted, known as "red dots." They provide no authority requiring an updated staff report. Also, the record directly contradicts the Hook-Wilsons' claim their red dots did not receive "full and fair consideration," as a councilmember stated the City Council received all red dots and had "ample opportunity to review them." Although the Hook-Wilsons assert in reply this "cannot possibly have been true," their disbelief is not enough to persuade us. In their opening brief, the Hook-Wilsons challenge the alleged failure to consider only their two red dots, which including transmittal emails amount to just 23 pages received days before the hearing, making it entirely plausible the City Council had time to consider them.

The Hook-Wilsons forfeited their remaining fairness claims of error. They argue (1) "[t]he fact that new evidence had been submitted should have compelled the City Council to grant the de novo hearing" and (2) they were deprived a fair hearing when the City Council "did not allow discussion" before voting and did not state its "reasons for a decision." The Hook-Wilsons, however, forfeited those claims by raising them for the first time in their reply brief. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1519, fn. 3.) Although, at oral argument, counsel for the Hook-Wilsons indicated the "new evidence" claim appears in the opening brief, he directed us to where the statement of facts contains a general description of the City's appeal process but does not advance the "new evidence" claim. The Hook-Wilsons also contend the hearing was "fundamentally unfair" because the recusal of two City Council members meant they had to obtain two out of three votes instead of two out of five. Their counsel admitted to the trial court that "[t]here's no authority" for this argument, and they provide none on appeal.

10

Without any supporting authority, we deem that point forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

The Hook-Wilsons thus have not met their burden to show an unfair hearing before the City Council, either.

C.

Next, the Hook-Wilsons contend the City abused its discretion by failing to proceed in the manner required by law. They have not convinced us error exists on this basis.

We review questions of law like interpreting city ordinances de novo and factual questions for substantial evidence. (*Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027.)

The Hook-Wilsons include only general statements of law under this heading without identifying how the City purportedly failed to proceed in the manner required by law. That defect alone is grounds to deem the point forfeited. (See *Acuna*, 9 Cal.App.5th at p. 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

To the extent the heading refers to the Hook-Wilsons' assertion the City Council "violat[ed] the law" by not (1) allowing the members to confer before voting and (2) stating the reasons for voting against a de novo hearing, as noted above, the Hook-Wilsons forfeited these claims by not raising them until their reply brief.

To the extent this heading refers to their claim the Planning Commission adopted an evidentiary standard requiring photographic evidence "in direct contradiction of the standard expressed in the Ordinance," we disagree. The Municipal Code directs the Planning Commission to make findings of fact about the existence of the alleged scenic view based on

11

"[d]ocumentable evidence." (§ 23.51.050(B)(2).) The Hook-Wilsons contend the City's staff "improperly advised" the Planning Commission to assess the view based on "[e]vidence, including photographs," which they interpret to *require* photographic evidence of a view. The term "including," however, "is ordinarily a word of enlargement and not of limitation." (*Craig v. City of Poway* (1994) 28 Cal.App.4th 319, 339.) And although the Planning Commission members discussed the lack of photographic evidence showing an ocean view from inside the home before the 2015 topping, they considered non-photographic evidence including written information and oral testimony. As a result, they did not adopt a narrower evidentiary standard than permitted under the Municipal Code.

## D.

Finally, the Hook-Wilsons argue the City abused its discretion because its findings are not supported by the evidence. (Code Civ. Proc., § 1094.5(b).) We conclude they are.

## 1.

The parties disagree about the standard of review for this claim. The Hook-Wilsons advocate for independent judgment, arguing this matter affects a "fundamental vested right." The City, in contrast, seeks substantial evidence review because it argues the Hook-Wilsons "do not have a fundamental vested right to a scenic view they created without authorization, and where purely economic interests are at stake, courts generally apply the substantial evidence test."

When assessing abuse of discretion based on an agency's findings, we always review for substantial evidence. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1058.) What varies is whose findings we review—the trial court's or the agency's. (*Ibid.*) If the

trial court properly applied substantial evidence review because no fundamental vested right was involved, we review the administrative record "to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them." (*Ibid.*)

We determine if a right is fundamental and vested in this context on a case-by-case basis by looking "to the nature of the right involved." (*JKH Enterprises*, 142 Cal.App.4th at p. 1059.) We "examine the extent to which a right is vested, i.e., legitimately acquired or already possessed by the individual, in determining whether it is fundamental." (*Id.* at p. 1060.)

Here, the trial court applied substantial evidence review after finding (1) "nothing fundamental about a right to view the Pacific Ocean" and (2) the Hook-Wilsons "did not legitimately acquire the right to the scenic view" given the lack of permission to top the trees. While the Hook-Wilsons rely on the Municipal Code, "by its very existence and its express terms," to claim their view is a fundamental vested right, they do not challenge or even address the court's finding that they did not legitimately acquire it. As a "fundamental principle of appellate procedure," we presume the trial court's judgment is correct, and appellants bear the burden to affirmatively show error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Because the Hook-Wilsons have not shown the trial court erred in finding any right to their view was not legitimately acquired, we conclude the trial court properly applied substantial evidence review.

As a result, we will review the administrative record for substantial evidence supporting the City's findings.

2.

The Hook-Wilsons argue their application "should have been granted" based on the weight of the "ample evidence" they submitted to show a view existed in 2012. But we conclude substantial evidence supports the Planning Commission's finding that the Hook-Wilsons did not establish a preexisting ocean view from their living room. As explained earlier, the Planning Commission did not, as the Hook-Wilsons contend, "simply refuse[ ]" to give any evidentiary value to the satellite images or witness statements. Rather, it weighed all evidence presented and found the Hook-Wilsons' claim wanting. Substantial evidence supports that result, including statements from people long familiar with the state of the Ziskins' yard that the trees were never so substantially trimmed. Although the Hook-Wilsons argue their evidence proves otherwise, we resolve all evidentiary conflicts and draw all inferences in the City's favor. (*JKH Enterprises*, 142 Cal.App.4th at p. 1058.)

III.

We affirm. The City is entitled to its appellate costs.

CASTILLO, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.

14